No. 18,774.

WALTER W. McLEAN et al., *Appellees*, v. T. J. McLEAN et al., *Appellants*.

SYLLABUS BY THE COURT.

1. DESCENT OF KANSAS REAL ESTATE — *Governed by Kansas Statutes.* Upon the death of the owner, the descent of his real property situated in this state is governed solely by chapter 33 of the General Statutes of 1909.

2. ILLEGITIMATE CHILDREN—*Inheritance—Recognition by Father—Question of Fact.* Whether an illegitimate son has been so recognized as such by his father as to constitute a general and notorious recognition of that relation is a question of fact.

Appeal from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed May 9, 1914. Affirmed.

*A. M. Jackson,* of Winfield, and *A. L. Noble,* of Medicine Lodge, for the appellants.

*A. F. Sims,* of Howard, *G. H. Buckman,* and *S. C. Bloss,* both of Winfield, for the appellees.

The opinion of the court was delivered by

SMITH, J.: The following are the facts, so far as not controverted, of this case: The action is ejectment for the recovery of about four hundred acres of land lying in Cowley and Elk counties owned by one Hardin McLean at the time of his death, in 1910. The appellees, plaintiffs, are an alleged bastard son of Hardin McLean, and those to whom this alleged son has conveyed undivided interests by deed since the death of the intestate; and the appellants, defendants, are those collateral relatives of McLean to whom the land would descend under our statute of descents (Gen. Stat. 1909, §§ 2935-2967) if the alleged bastard son is not qualified to inherit. The only issue in the case is that of the qualification of the alleged illegitimate to inherit by reason of recognition of him as a son by the putative father otherwise than in writing.

The petition, after stating the names and addresses of the plaintiffs, is the usual petition in ejectment. The case was tried to a jury, and a general verdict returned for the appellees, plaintiffs, and judgment followed in accordance with the verdict in their favor.

The appellee, Walter W. McLean, was born in Kentucky in 1877, and remained in that state for about eighteen months thereafter, as did also his mother and the decedent, his putative father. When the boy was about eighteen months old he was removed with his mother and her family to Tennessee, where they remained six or eight years, and then removed to Arkansas, where they resided until the mother's death and where the son resided until after the death of decedent. Shortly after the removal of that family to Tennessee the decedent moved to Kansas, where he remained about ten years; he then returned to Kentucky for about ten years, when he came to Kansas and resided here until about two years before his death, when he removed to Oklahoma, where he remained until a short time before his death, which occurred at Winfield, Kan. Walter W. McLean never heard of or from decedent until after the latter's death, in December, 1910.

The appellants, for the first defense to the petition, admitted the death of Hardin McLean in December, 1910, and alleged that at the time of his death he was a resident in good faith of the county of Osage, in the state of Oklahoma, and further that at his death they were his sole heirs at law; that they inherited, as such heirs, all his property, and were the owners and in possession of the real property in controversy, and further denied all the allegations of the petition. In the second defense they alleged that the decedent was never married, and admitted his residence in Kentucky and removal to Kansas, as alleged in the petition. They further alleged that at the death of Hardin McLean one E. R. McLean, a resident of Osage county, Oklahoma, was by the county court of Osage county,

Oklahoma, which court had sole jurisdiction in the premises, duly appointed administrator of the decedent's estate; that he at once duly qualified as such administrator and took possession of all property belonging to the estate found in Oklahoma. They also pleaded the laws of Oklahoma; in force in that state, by which it is provided that "Every illegitimate child is an heir of the person who in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child." (Compiled Laws of Okla. 1909, § 8987.) They further pleaded the laws of the state of Kentucky, in force in 1877 and ever since, on the question of the inheritance of illegitimate children from the father. In the third defense they allege that the plaintiff, Walter W. McLean (whom they designate as Williford), is not the bastard child of the decedent, and that his coplaintiffs obtained whatever interest they now claim in the real estate in controversy by reason of advancements made to him by them in their joint efforts to perpetrate a fraud upon these defendants, and that all took their respective interests therein with full knowledge of such fraudulent claim. And further, they allege that they are the owners of the legal and equitable title and in possession of the land described in plaintiff's petition, and that plaintiffs have no interest therein.

The case was tried to a jury in the district court of Cowley county in December, 1912, verdict and judgment were for appellees, and a motion for new trial was overruled.

The appellants made numerous assignments of error, but in the argument in their brief they say that the case should be reversed upon the ground that the evidence fails to show such a general and notorious recognition as our statute requires to enable an illegitimate to inherit from the father. This is the principal question remaining in the case.

The rights of the parties depend, first, on whether

McLean v. McLean.

the laws of Kansas or of Kentucky or Oklahoma are to be applied. It is believed to be a universal rule that the descent of real property is governed by the law of the state or nation within which it is situated. (14 Cyc. 21.)

In accordance with the general rule, we hold that the law of Kansas determines the descent of the property in dispute and that it is entirely immaterial what the law of Kentucky or Oklahoma may be.

Sections 2955 and 2956 of the General Statutes of 1909, relating to inheritance by illegitimate children, read:

"Illegitimate children inherit from the mother, and the mother from the children.

"They shall also inherit from the father whenever they have been recognized by him as his children; but such recognition must have been general and notorious, or else in writing."

It only remains to be determined whether the plaintiff, Walter W. McLean, was the illegitimate son of the decedent, Hardin McLean, and whether Hardin McLean had recognized such relationship in such manner as to be called a general and notorious acknowledgment thereof. These are questions of fact for the determination of the jury under proper instructions as to what constitutes a general and notorious recognition of the relation of father and son on the part of the father. There is no claim of any recognition thereof in writing.

The law of the state of Iowa is essentially like our statute cited. Section 2466 of the Iowa Code of 1873 provides that illegitimate children "shall inherit from the father whenever the paternity is proven during the life of the father, or they have been recognized by him as his children, but such recognition must have been general and notorious or else in writing."

*Van Horn v. Van Horn,* 107 Iowa, 247, 77 N. W. 846, and other cases are referred to by appellants to show that the evidence of recognition by decedent of the

appellee as his son was not sufficient to make it general and notorious. The circumstances of each case are, of course, different, and the gist of the decisions is that the extent of recognition necessary to meet the statutory requirements depends in some measure upon the circumstances of each case. Where frequent opportunities for such recognition are presented for a long period more is required than where such opportunities are less in number or in a more limited time.

The first assignment of error urged by the appellants is that counsel were permitted to say to the jury in the opening statement that the deceased had been prosecuted for bastardy by the mother of the child and adjudged to provide for its support, and that he did not testify on the trial.

The opening statement at the beginning of a trial is designed to give the court and jury a general idea of the case and what the party expects to prove. However much the party may fall short of what he says he expects to prove can not be determined by the court at the time, and only good faith should be required on the part of the attorney. No evidence of prosecution for bastardy was formally produced by a production of a record thereof, but witnesses on the part of appellees and appellants referred to incidents as about the time of the bastardy proceeding, and there was evidence of the decedent paying money to the mother and of his complaining of the drain upon his resources in supporting the mother or child. There was sufficient to show that appellees had some ground for the statement. We think the court did not err in not withdrawing it from the jury.

Much of the appellant's brief is taken up in discussing the evidence of the numerous witnesses, and apparently balancing the evidence of witnesses who testified to acts and declarations of the decedent which admitted or recognized his parentage of Walter W. McLean with the statements of other acquaintances

McLean v. McLean.

who had heard nothing in that respect, especially the evidence of close acquaintances after the decedent came to Kansas. The preponderance of the evidence and what it proves, if conflicting, are for the jury and the trial court. It is only for us to determine whether there was sufficient evidence to sustain their verdict and to justify the approval thereof by the court. It is claimed by the appellees, and we believe correctly, that there were fifteen witnesses who testified to acts and declarations of the decedent indicating his paternity of the child, while the appellants claim that seven witnesses, intimate friends of the decedent, never heard him mention the child in any way, nor did they know of any rumor or understanding in the neighborhood that the decedent had made such recognition.

The latter evidence tends in no way to disprove the former unless each refers to the same time, which does not appear.

It is especially urged that the court erred in permitting several witnesses to testify that there was a general rumor and understanding in the Kentucky neighborhood among the neighbors and friends of the decedent that he was the father of the child; also in permitting the witnesses for the defense to be asked, over appellants' objection, if such rumor and understanding did not exist in the neighborhood. It is urged that this is hearsay, but the fact, if it is a fact, that a rumor of this character prevailed in the neighborhood at about the time the birth occurred is some evidence that the decedent knew thereof. As said in the Iowa cases cited, the existence of such a rumor is a matter for consideration by the jury, and especially if it is a general rumor and understanding it is natural that the person, if falsely implicated therein, would take some pains to deny it or disprove it. Instead of denying the rumor the evidence shows that at the time the mother and child were about to be removed from the neighborhood in Kentucky to Tennessee the decedent

went to the gateway to the house where they were and asserted that the child was as much his as hers, referring to the mother, and was about to force his way into the house to see the child or to prevent its being taken away; that he went there armed with a gun, and manifested an intention to carry out his purpose by force if necessary, but was dissuaded and induced to go away by a statement that a relative of the mother was in the house with a gun and there would be trouble if he persisted in going into the house. At this time, the evidence shows, there was quite a large gathering of people, neighbors and friends of the mother. It is said that the decedent talked with but two or three persons, but there is no evidence as to how many persons may have heard what he said, and naturally the people there would be informed of what he said and what transpired. He apparently made no effort at concealment of his purpose. This with the other evidence, we think, is sufficient to justify the finding of the jury that there was on his part a general and notorious recognition that the child was his own.

The trial took place over thirty years after this event, and the lapse of time might be considered in excusing either party from producing all of the evidence which may have at one time existed.

There is some criticism in appellant's brief of the instructions given by the court to the jury. The appellants requested the court to give a number of instructions to the jury, which request was refused, but the substance of most of them was embodied in the instructions given.

We have examined all these objections and requests and think the jury were fully and fairly instructed by the court, and find no material error therein nor in any of the trial errors assigned.

The judgment is affirmed.