GRACE E. HURST, *Appellant,* v. E. W. WAGNER, *as Administrator, Respondent.*[1]

*Stotler & Voorhees,* for appellant.

*H. M. Berkey,* for respondent.

GERAGHTY, J.—The plaintiff sued the defendant, administrator of the estate of C. Hardin Hurst, for money necessarily spent in the care and maintenance of her illegitimate child, the defendant's intestate being its putative father. Previous to suit, her claim had been filed with, and rejected by, the defendant.

In the complaint, plaintiff alleged that she

". . . and said C. Hardin Hurst, now deceased, cohabited together, commencing in the year 1924, and lived together and cohabited as man and wife openly and notoriously, from the month of April, 1925, until September, 1926, in various places in the United States, including the town of Oakesdale, Whitman

[1]Reported in 43 P. (2d) 964.

county, state of Washington, from June, 1925, until September, 1926; and during said time and on, to-wit, September 15, 1925, there was born to plaintiff and said C. Hardin Hurst a child, Lucille B. Hurst, in the city of Spokane, state of Washington, plaintiff being the mother of said child and said C. Hardin Hurst the father of said child; that said C. Hardin Hurst did in writing, on or about January 9, 1926, in the presence of a competent witness, at the town of Oakesdale, Whitman county, state of Washington, acknowledge himself to be the father of said child.''

Plaintiff alleged that, subsequent to September, 1926, she and Hurst lived separate and apart, at his instance and request; that he continued to live at Oakesdale, and she returned to the state of Ohio; that she had spent in the care and maintenance of her child, since September, 1926, the sum of twenty-five dollars per month, aggregating a total of $2,175, less approximately $175 advanced by Hurst in small sums at various times; and she prayed judgment against Hurst's estate for this sum. Responsive to defendant's motion, the plaintiff served a bill of particulars, amplifying somewhat her complaint by stating that there was no contract or agreement between her and Hurst as to any fixed sum he should pay for the care of the child, except that he stated to plaintiff at various times after its birth that he would do what was right in keeping the child; and that, in addition to this, he stated to her in October, 1930, he would establish a trust fund for the care of the child.

The trial court sustained a demurrer to the complaint, as amplified by bill of particulars, and, the plaintiff declining to plead further, judgment was entered dismissing her action.

Appellant assigns as error the order of the court sustaining respondent's demurrer and the entry of judgment of dismissal.

In *State v. Tieman,* 32 Wash. 294, 73 Pac. 375, 98 Am. St. 854, it is said:

"It is said, however, that this conclusion does not necessarily render the judgment appealed from void, because the judgment can be sustained under the common-law obligation of a father to support his child. But in the absence of a statute there is no legal obligation on the part of a putative father to support his illegitimate child. At the common law a bastard was *nullius filius,* and was incapable of inheriting either from his putative father or his mother, and, as that law was administered in England, neither a father nor mother was under any legal obligation to support an illegitimate child. The obligation was imposed on the mother by statute, but then only until the child reached the age of sixteen years, or acquired a settlement, and the mother remained unmarried. See 4 and 5 Wm. IV, ch. 76, § 71; 5 Cyc. 638. In some of the states of the Union the English rule with reference to the mother has not been followed, but, so far as we are advised, it is universally held that a statute must be found imposing the obligation on the putative father before he can be charged with the child's support."

While the plaintiff, in her bill of particulars, suggests a promise by the decedent to do what was right with respect to the child's keep, it could hardly be argued that this nebulous statement can be considered an enforcible obligation; and indeed, the appellant does not found her right upon the promise, but rather upon a construction of Rem. Rev. Stat., § 1345 [P. C. § 9850]. Appellant quotes the first clause of this section providing that,

"Every illegitimate child shall be considered as an heir to the person who shall in writing, signed in the presence of a competent witness, have acknowledged himself to be the father of such child, and shall in all cases be considered as heir of his mother, and shall inherit his or her estate, in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock; . . ."

It is argued from this partial reading of the section that the legislature intended that a child so acknowledged would be, to all intents and purposes, considered a legitimate child of the father, with a consequent duty resting upon him to support his acknowledged child. But the section does not end with the clause quoted by appellant, but continues:

". . . but he shall not be allowed to claim, as representing his father or mother, any part of the estate of his or her kindred, either lineal or collateral, unless before his death his parents shall have intermarried, and his father, after such marriage, shall have acknowledged him as aforesaid, and adopted him into his family, in which case such child and the legitimate children shall be considered as brothers and sisters, and on the death of either of them intestate, and without issue, the others shall inherit his estate, and he theirs, as heretofore provided in like manner as if all the children had been legitimate, saving to the father and mother, respectively, their rights in the estates of all the said children, as provided heretofore in like manner as if all had been legitimate."

It will thus be seen, from a reading of the section as a whole, that the acknowledgment in writing of an illegitimate child by the father confers upon the child a restricted right to inherit from the father, but does not of itself legitimatize the child. Legitimacy only follows where the parents have intermarried and the father, after marriage, shall have acknowledged the child in the manner provided.

The appellant cites *In re Gorkow's Estate,* 20 Wash. 563, 56 Pac. 385, and *In re Rohrer,* 22 Wash. 151, 60 Pac. 122. In the *Gorkow* case, it was held that, where an illegitimate child had been recognized by his father, in writing, he became as much the heir of his father, under Rem. Rev. Stat., § 1345, as a legitimate child; and that, upon the father's death, leaving no widow,

such child was as much entitled as one born in wedlock to the possession of the homestead and to an allowance for support pending settlement of the estate. Clearly, this necessarily followed from the language of the statute. By acknowledgment in writing, the child became the father's heir with all the incidents attaching to that status. But the case did not hold that, by acknowledgment, he thereby became legitimate.

In the *Rohrer* case, Rohrer, an unmarried man, died intestate, and his daughter, Theresa Muller, born out of wedlock, applied for letters of administration upon his estate. Her application for appointment was contested by a brother of the deceased. To sustain her right the daughter offered in evidence a complaint signed and sworn to by the deceased in a case brought by him against another for her seduction, in which complaint it was alleged that Theresa Muller was the daughter of Rohrer. The *Rohrer* case decided no more than that the acknowledgment required by the statute need not be made solely for the purpose of making the child competent to inherit, but that any writing conforming to the terms of the statute, even though made in a collateral matter, would be sufficient.

Notwithstanding the common law rule, the mother of an illegitimate child is not without a remedy, because, under the bastardy statute, Rem. Rev. Stat., § 1970 [P. C. § 7411-1], the putative father can be required to provide for his illegitimate offspring. Such a proceeding, however, is barred if not commenced within two years after the birth of the child. The appellant did not avail herself of this remedy.

So far as the child is concerned, under the allegations of the complaint she inherits as the heir of her father. The mother is making no claim on behalf of

her child, but seeks to recover as against the estate of the child's father, to the possible depletion of her inheritance, for money heretofore spent in her maintenance.

We think the trial court correctly sustained the demurrer, and the judgment entered thereon is affirmed.

MILLARD, C. J., TOLMAN, MAIN, and BEALS, JJ., concur.