**PRYOR, Adm'x, v. JUMP.**

No. 28323.   Oct. 25, 1938.

R. A. Barney and C. H. Drew, for plaintiff in error.

Louis O. Fink, for defendant in error.

DAVISON, J. This is an appeal from a judgment of the county court of Osage county rendered against Edna Drew Pryor, administratrix of the estate of Antwine Pryor, deceased, and against the estate of said deceased, and in favor of Antwine Pryor, a minor, and putative bastard child of Antwine Pryor, deceased.

The record discloses that bastardy proceedings were instituted in the county court of Osage county against Antwine Pryor, putative father of a bastard child born to Thelma Camp, who is now Thelma Camp Jump. The county court found Antwine Pryor to be the father of the child, who was also named Antwine Pryor. This judgment was appealed to this court and affirmed (Pryor v. State ex rel. Camp, 170 Okla. 40, 38 P.2d 923). On April 23, 1934, the county court of Osage county rendered judgment against Antwine Pryor in the sum of $1,200 for the support of this child.

Antwine Pryor, the father, died July 20, 1936, and Edna Drew Pryor, his wife, was appointed as administratrix of his estate. The estate was duly administered. There was an unpaid balance of $315 on the judg-

ment at the time of the death of the deceased. A claim for said amount was duly presented to the administratrix and allowed. Antwine Pryor was a restricted Osage Indian. The claim was presented to the Superintendent of the Osage Indian Agency, and upon his request was approved by the Secretary of the Interior and the money was ready for payment.

On September 17, 1937, the mother of the child in question filed her petition in the county court of Osage county in the original bastardy case, setting up the fact of the death of Antwine Pryor, the father, and the appointment of an administratrix for his estate, and asked the court to render judgment against the estate of the deceased for an additional sum for the support of the child.

The administratrix filed her answer denying the authority of the county court to render judgment for the additional sum. Testimony was heard and judgment was rendered by the court modifying the former judgment by allowing the mother of said minor the additional sum of $2,400 against the estate of deceased.

This appeal has been taken from that judgment. It is contended by the administratrix that upon the death of Antwine Pryor all further proceedings abated, and that the court was thereafter without jurisdiction to modify or enlarge the judgment previously made.

Section 1726, O. S. 1931 (chapter 14, article 3), under which bastardy proceedings are authorized, provides:

"The court may, at any time, enlarge, diminish or vacate any order or judgment in proceedings under this article on such notice to the defendant and county attorney as the court may prescribe."

The question presented there is: Did the county court, after the death of Antwine Pryor, have authority to enlarge, diminish, or vacate the $1,200 judgment rendered against him during his lifetime? This presents a question of survival of actions and involves the application of the Oklahoma statutes thereon in bastardy proceedings.

Section 568, O. S. 1931, provides:

"In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to the person, or to real or personal estate, or for any deceit or fraud, shall also survive; and the action may be brought, notwithstanding the death of the person entitled or liable to the same."

Section 569, O. S. 1931, provides:

"No action pending in any court shall abate by the death of either or both parties thereto, except an action for libel, slander, malicious prosecution, for a nuisance, or against a justice of the peace for misconduct in office, which shall abate by the death of the defendant."

In State ex rel. v. City of Shawnee et al., 167 Okla. 582, 31 P.2d 552, 92 A. L. R. 948, this court held:

"Section 823, C. O. S. 1921, is remedial and procedural and does not prevent the abatement of a right of action or cause of action unless such an action survives by virtue of section 822, C. O. S. 1921, relating to the survival of actions."

And said:

"It seems apparent that it never was the Legislature's intention to provide that an action should continue after the death of a party when the right of action or cause of action would not survive at common law, except as otherwise provided for in section 822, supra."

Sections 822 and 823, cited above, are sections 568 and 569, O. S. 1931, quoted herein in full.

The court further quoted the common-law rule as laid down in 3 Bl. Com. 302 as follows:

"* * * The death of either party is at once an abatement of the suit. And in actions merely personal, arising ex delicto (from wrong done), for wrongs actually done or committed by the defendant, as trespass, battery, and slander, the rule is that actio personalis moritur cum persona (a personal action dies with the person); and it shall never be revived either by or against the executors or other representatives, for neither the executors of the plaintiff have received, nor those of the defendant have committed, in their own personal capacity, any manner of wrong or injury."

This is not one of the causes named in section 568, O. S. 1931, in addition to causes which survived at common law. We must conclude that there is no provision in our statute which prevents a cause of action in a bastardy proceeding from abating upon the death of the putative father.

A further question arises here as to whether or not the action in the instant case is a pending action which authorizes the court to enlarge, diminish, or vacate the judgment previously entered. If the action were a pending action at the time of the death of the putative father and survived, then it would seem reasonable to conclude that the cause of action would also survive. We find that a very few

states have statutes providing for survival of actions in bastardy proceedings.

The plaintiff has cited the cases of State v. Williams, 8 Ind. 191, and Moore v. State (Kan.) 28 P. 1072, as holding that the death of the putative father does not abate a bastardy action. It is sufficient to say that at the time the opinions were prepared, these states had a statute providing for survival of actions in bastardy proceedings under the condition provided in their statutes.

The general rule is stated in 7 American Jurisprudence, p. 691, par. 100, as follows:

"In the absence of a statute to the contrary, the better view is that a bastardy proceeding abates on the death of the defendant. This is true even though such death occurs after judgment has been rendered in favor of the complainant and pending review. As a reason for this rule it has been said: 'The process, though held to be a civil proceeding, is criminal in form, and is an extraordinary means to compel a father to assist in the support of his illegitimate child, or suffer imprisonment as a penalty for his neglect to do so. There is no fitness in the proceeding that would adapt itself to the principle of survivorship. If the pending action survives, then the cause of action would survive as well, and the process could be originally instituted against the administrator of the deceased. The incongruities that would beset such a proceeding would be obvious enough. It would be a strange sight to see an administrator arrested, required to give a bond, be put on trial, and perhaps imprisoned for an act of bastardy committed by the party officially represented by him.'" Citing People v. Kemppainen, 163 Mich. 186, 128 N. W. 183, 30 L. R. A. (N. S.) 1167.

The rule above stated was followed in Clements v. Durham's Adm'rs, 52 N. C. 100, wherein the court held:

"Proceedings in bastardy cannot be instituted against the personal representative of the putative father, in order to subject his estate to the maintenance of the child."

And said:

"If, then, the proceedings in bastardy, against the personal representatives of the reputed father, cannot be sustained under the first chapter of the Revised Code, it is very certain they can derive no aid from the 12th chapter of that Code. There, every provision is predicated upon the supposition that the reputed father, himself, is alone the person against whom the proceedings are to be had."

In McKenzie v. Lombard, 85 Me. 224, 27 Atl. 110, that court said:

"The question here is whether a bastardy proceeding survives against the personal representatives of a respondent who has died during the pendency of a proceeding in court before a trial has been had. We feel strongly assured that it cannot survive. The proposition finds no favor in the common law, and there is no statutory provision authorizing it."

And further said:

"Besides, it would be an extremely severe and very questionable policy that would allow a living woman to swear the paternity of her illegitimate offspring upon a dead man."

In Myers v. Harrington, 70 Cal. App. 680, 234 P. 412, that court said:

"Under the common law, proceedings against putative father to compel maintenance of illegitimate child abated upon the death of putative father.

"The common-law rule that proceedings against putative father to require maintenance of illegitimate child abate on death of putative father has not been changed, and hence, proceeding under Civ. Code, sec. 196a, abates at death of father."

It is true that our lawmakers have to some extent relaxed the severity of the common law to the extent of permitting an illegitimate child to claim support from the property of the father during the lifetime of such father. The Legislature of this state, however, has not passed any statute which authorizes a cause of action in bastardy proceedings to survive the death of putative father, and we hold that no such cause of action survives. Neither do we think that our statutes on survival and abatement of actions or on bastardy proceedings, authorizing the county court to modify its order of judgment rendered in such cases, are susceptible of such interpretation as would warrant this court in holding that, when an order or judgment for support and maintenance of the bastard child has been rendered and is unappealed from, such a proceeding or action is still pending in the court against the father and will survive his death, thus warranting a revivor against his legal representatives upon which an additional judgment may be rendered against the administrator and his estate.

In Clements v. Durham's Adm'rs, supra, that court said:

"It is manifest that proceedings in bastardy cannot, properly, be called an action, suit or other proceeding to recover or obtain money, property, or damages, but are, as we have said before, only police regulations, adopted for the purpose of relieving the public from the support of bastard children, by imposing it upon the putative fathers of such children."

The mode of proceeding prescribed by the Oklahoma statutes is directed against the reputed father and seems to be entirely inapplicable to any other person. Neither the procedure for the original proceeding nor that relative to modifying the original order or judgment makes any reference whatever to the executor or administrator of the estate of the reputed father.

This case is one of first impression in this state and we must be guided to some extent by the expressions from other courts dealing with this question. The real purpose and intent of the law is more fully complied with by holding that there was no pending action against Antwine Pryor at the time of his death which could be revived against his legal representative and his estate. All right to further proceeding for the purpose of enlarging or diminishing the former order and judgment relative to the award for the maintenance of the bastard child abated upon the death of the father, Antwine Pryor, and could not be revived.

The judgment of the trial court is reversed and the cause remanded, with instructions that the judgment be set aside and the petition be dismissed.

Reversed.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS and HURST, JJ., concur.