Faith M. Toms, Plaintiff-Appellant, v. Elfrieda Loh-
rentz, Individually and as Administrator of the
Estate of George M. Heyder, Deceased, Frida A.
Heyder, Anna Johnson and Elsie Kleinbeck,
Defendants-Appellees.

Gen. No. 11,621.

Second District, First Division.

October 17, 1962.

Rehearing denied November 23, 1962.

George Yellen, of Chicago, for appellant.

Edward J. Vertovec, of Elmhurst, for appellees.

SMITH, J.

A somewhat intensive courtship over almost four years serves as the launching pad for this litigation. Some six months after the death of her suitor and almost five months after the birth of her child, plaintiff, the distaff side of the relationship, filed her suit in two counts against the administrator of his estate and his heirs at law. Count I seeks specific performance of an alleged contract to make a will. The Chancellor heard the evidence and, at the close of the plaintiff's case, dismissed Count I for want of equity. Count II seeks to posthumously establish paternity, and enforce liability for necessary medical bills and support of the child against the estate and heirs of the putative father. On motion this count was dismissed and an appropriate judgment in bar was entered. This appeal followed.

Plaintiff seeks to mould her relief from undisputed facts as the defendants offered no evidence. Plaintiff and George M. Heyder initiated the courtship in 1956 and fanned the flame five or six nights a week until

■■■■■■■

the untimely death of George on April 11, 1960. One of its fruits was a male child born to the plaintiff on May 26, 1960. This circumstance, or happenstance, as the case may be, together with photographs of the couple in evidence, dispel any thought that this was a simple, platonic friendship. At his request, plaintiff sought no other male companionship, gave him a free dandruff treatment at the beauty parlor, bought stamps, clothing, license plates and photographic materials for him, frequently shopped for him and performed secretarial work for him from time to time. As early as 1958 he said he would make out a will, take care of everything for Faith and she had nothing to worry about. He bought and gave to her an engagement ring on February 14, 1958. Finally, in November of 1959, at a family birthday party, George said, "Faith's father and mother are present and I'd like to have them hear it while we are together. Faith is pregnant and that is my child, and I'm going to take care of her and that child. I'm going to make my will and I want that baby—she wants that baby to have a name and so do I, and I'm going to marry Faith—That baby is my baby—I'm going to marry Faith just as quick as I can get things straightened around." This is the material evidence as abstracted. This is the foundation of the suit. George was a mechanic earning about $110 per week and he left an estate of about $7,600. Five months passed after George drew the plans for his future and Faith's plans which were never consummated because of his untimely death. It seems clear that the law must leave them as they were at that time—just plans.

■■ It is but a truism to say that in a suit for specific performance of a contract to make a will, the contract must be explicit, clear and convincing. Greenwood v. Com. Nat'l Bank of Peoria, 7 Ill2d 436, 130

NE2d 753. There isn't a syllable of evidence in this record that Faith promised to do anything and thus a mutuality of promises is wholly lacking. Only through blind credulity could we conclude that the services rendered by Faith were in reliance on George's promise to make a will rather than the ageless human chemistry of male-female affinity. Not only does the evidence fail to show any contract, but it fails to show any substantial change for the worse by the promisee in reliance on the alleged contract to make a will. Testimony in Greenwood, noted above, that the deceased said, "I'm going to make a Will that will take care of Ella all her life"; that "she would be taken care of"; and "she would always be provided for"; was held insufficient with these words: "The disconnected evidence in regard to the alleged contract amounted to nothing more than declarations of testamentary intention on the part of Williams. . . . Mere expressions of intention to devise property cannot satisfy the requirements." The experienced Chancellor was manifestly correct in his conclusion that the evidence in this record is too anemic to support a living cause of action.

■ ■ Count II by its own language is bottomed squarely on the Paternity Act, Ill Rev Stats 1959, Chap 106¾. At common law no duty reposed in a putative father to support his child born out of wedlock. Where a remedy is the creature of statute, such remedy may be enforced only in the manner prescribed by that statute. Neuchiller v. Neuchiller, 351 Ill App 304, 114 NE2d 900. "Where the remedy is in derogation of the common law, deriving all its validity from statute, the proceedings, in all essential particulars, must conform to the requirements of the statute. All purely statutory remedies must be strictly limited

to the cases provided for by the statutes creating them." 1 ILP 369, Actions, Par 62; Kosicki v. S. A. Healy Co. 1942, 380 Ill 298, 44 NE2d 27. Thus it seems clear that we are fenced in by the terms of the statute.

 Upon the filing of a complaint, the Paternity Act provides that the "Court shall thereupon issue a warrant for the apprehension of the defendant." This is the only method provided for obtaining jurisdiction of the putative father. Patently, it could not be employed in the case at bar. Patently it implies that the statute contemplates a living father at the time the statute is triggered into action. Under Par 9 of the Statute, after paternity has been adjudicated the death of the father abates further payments and provides that only accrued payments may be recovered from his estate. Under Par 13, the death of the child abates further payments and only unpaid accrued payments are collectible from the father or his bondsmen. It thus appears that either the death of the father, or the death of the child after a determination of paternity, successfully inters the remedy as to future payments and effectively restricts the liability of the father's estate to accrued, unpaid payments. It would seem a baseless distortion of legislative intent to hold that the death of the father abates future payments, but opens the flood-gates to liabilities which are nonexistent at the time of his death. We necessarily conclude that paternity may not be laid at the door of a putative father posthumously under the statute in question, nor can liability in any event be imposed under the statute on his estate in the absence of an adjudication of paternity during the lifetime of the father. In our judgment the unfortunate death of George not only brought an end to his declared dreams for himself, Faith and their

unborn child, but effectively interred and laid to rest any remedy under the Paternity Act.

The judgment of the Circuit Court of DuPage County must be, and it is, hereby affirmed.

Affirmed.

DOVE, P. J. and McNEAL, J., concur.