Saul Moskoff, J.
The petitioner, by petition dated April 20, 1966, seeks an order of this court declaring the paternity of a child born to her on July 4,1963 and an order for the support of the child. Service of process upon the respondent was effected on April 27,1966.
The respondent moves to dismiss the petition upon two separate grounds — first, that the remedy sought by petitioner is not available by reason of a prior agreement and compromise approved by the court in accordance with section 516 of the Family Court Act and second, that the proceeding is time-barred, not having been instituted within two years of the birth of the child as provided in section 517 of the Family Court Act.
The records of the court disclose that this petitioner brought on an earlier proceeding seeking the identical relief by petition executed on December 7, 1962, the child not yet having been delivered. On December 18, 1963, the parties entered into an “ Agreement Compromising Claims for Support of Child Born Out of Wedlock”. The “Whereas” provisions (page 1) recited:
“ Whereas, the Party of the First Part gave birth to a female child out of wedlock on or about the 4th day of July, 1963; and
‘ ‘ Whereas, the Party of the Second Part does hereby deny the paternity of the said child and his legal liability for the support thereof, and
‘ ‘ Whereas, the parties hereto desire to enter into an Agreement or compromise with respect to support and education of the child and the expenses of pregnancy, confinement and recovery of the Party of the First Part. ”
Under the terms of the agreement the respondent was required to pay to the petitioner the sum of $500 as and for lying-in expenses and to pay to petitioner the sum of $100 monthly commencing December 18, 1963 until the child reaches the age of 21 years.
Paragraph 5 of the agreement provides that if there be a default in the performance of the terms of the agreement, at the option of the party of the first part, (the petitioner herein) the agreement shall terminate and the party of the first part *794 shall have the right to take any action or institute any and all proceedings which might have been taken or instituted if the agreement had not been entered into. No claim is now made by petitioner that the respondent has defaulted as to any of the terms of the agreement,
By order of this court (Torres, J.) dated January 30, 1964 (Docket No. P-483-1962) the agreement executed by the parties was found to provide adequately for the support and education of the child and for lying-in expenses and was formally approved. The order further provided that the petition be dismissed “without prejudice ’.
It is to be noted that the proceeding presently before the court is not one to vacate the court-approved agreement nor to modify the terms thereof, even assuming this court has the power to do so, on the ground that the financial circumstances of the parties have changed substantially.
Thus the question presented is as to the effect of the court-approved agreement with respect to its provisions as to support and education and as to the issue of paternity. The petitioner in effect argues that the dismissal of the first petition “ without prejudice ” authorizes the present proceeding. However, short shrift may be made of this contention since the court by use of the term “without prejudice ” could not vest the respondent with a right not accorded to him by statute. Moreover, it is obvious that by the use of the term “without prejudice ”, the court intended to “keep the door open” for the petitioner in the event the respondent failed to comply with the terms of the agreement. She further argues that the child, the subject of this proceeding, is entitled to a judicial determination as to the alleged parentage. Somewhat subdued is her argument as to the right to change the present provisions as to support and education of the child.
The respondent contends that the agreement is final and binding upon the mother, the alleged putative father, and the child for all purposes and that the intent of the Legislature, as reflected in section 516, was to enable a harassed respondent to “ buy his peace ”. However, such a contention, raised in somewhat similar circumstance, albeit not involving the issue of paternity, failed to obtain the favorable consideration of the majority of the Appellate Division in Matter of Bancroft v. Court of Special Sessions (278 App. Div. 141, affd. without opn. 303 N. Y. 728). Such an argument, asserted by the minority of the court, with the observation that a contrary holding would destroy the incentive to enter into agreements such as now under consideration, failed to persuade the majority.
*795 Neither the petitioner nor the respondent has furnished the court with citation of authority as to the precise issues presented and it appears that this case is one of novel impression.
To begin with, since the legal obligation of a putative father to contribute to the support of an out-of-wedlock child does not stem from common law, (“ Anonymous ” v. “ Anonymous ”, 13 Misc 2d 718, affd. 7 A D 2d 979; Schneider v. Kennat, 267 App. Div. 589, mot. for lv. app. den. 267 App. Div. 954), reliance must be placed on statutory enactments in this area.
Section 516 of the Family Court Act provides:
“ (a) An agreement or compromise made by the mother or by some authorized person on behalf of either the mother or child concerning the support of either is binding upon the mother and child only when the court determines that adequate provision has been made and is fully secured and approves said agreement or compromise.
“ (b) No agreement or compromise under this section shall be approved until notice and opportunity to be heard are given to the public welfare official of the county, city or town where the mother resides or the child is found.
“ (c) The complete performance of the agreement or compromise, when so approved, bars other remedies of the mother or child for the support and education of the child. ”
The foregoing language would appear to be plain and unambiguous. Subdivision (c) acts as a bar to “ other remedies” for “ the support and education” of the child. “ Other remedies ” would include subsequent proceedings of the same nature as the one which culminated in the agreement. “ Support and education” does not, however, include a determination of paternity. Thus, the Legislature, while barring the mother and child from further proceedings with respect to support and education, did not preclude further judicial inquiry as to parentage. If the Legislature had intended otherwise, how simple it would have been to provide in subdivision (c) that the complete performance of the agreement or compromise bars “other remedies” of the mother or child with respect to all matters dealt with in this article. Significant, too, is the Legislature’s choice of language in subdivision (a) in providing that ‘ ‘ An agreement or compromise made by the mother * * * concerning the support ” is binding upon the mother. Here, too, the Legislature explicitly limited the finality of the agreement with respect to “ support ”. This reasoning is consistent with the principle that a filiation proceeding is a creature of statute controlled by the Legislature, having the twofold purpose in the 17th Senatorial District and was not an aggrieved can- *796 of determining paternity and securing support for the child. (Hough v. Light, 275 App. Div. 299.)
In Haag v. Barnes (9 N Y 2d 554) respondent moved to dismiss a petition in a filiation proceeding on the basis of an agreement of compromise executed in Chicago, Illinois. The agreement provides for support payments for the child although it was stipulated that such payments “ shall not constitute an admission ” that respondent in that proceeding is the father of the child. The court held, for reasons not here relevant, the Illinois agreement to be valid and enforcible under Illinois law, and not contrary to the public policy of New York and said (p. 561): “ The public policy of this State having been satisfied, there is no reason why we should not enforce the provisions of the parties’ support agreement under Illinois law and treat the agreement as a bar to the present action for support ”. Thus, in Haag the court considered the agreement only as to the issue of support, not considering the issue of paternity.
Most persuasive in the determination of the issues herein is the action taken by the 1965 Legislature in amending the Decedent Estate Law by adding thereto, effective March 1, 1966, section 83-a which, insofar as here relevant, provides in subdivision 1:
(b) An illegitimate child is the legitimate child of his father so that he and his issue inherit from his father if a court of competent jurisdiction shall have found the decedent to be the father of such child and shall have made an order of filiation declaring paternity in a proceeding instituted during the pregnancy of the mother or within two years from the birth of the child.
“ (c) The approval of any agreement or compromise without the making of an order of filiation declaring paternity shall not enable the child to inherit from the respondent in any such proceeding. ”
In connection therewith the note of the Temporary State Commission on the Law of Estates is interesting: “ This act is recommended by the Temporary Commission on the Law of Estates. * * * In order to avoid post-death litigation on the issue of paternity, inheritance from the father is permitted only where a court of competent jurisdiction has made adjudication of paternity during the lifetime of the father ”.
Thus, if the respondent’s contentions were given validity, a child born out-of-wedlock, who is the subject of a court-approved agreement wherein paternity is denied, could never be the beneficiary of the laudable objectives intended by the Legislature in enacting section 83-a. Such a result would be, in the court’s view, contrary to our public policy. The law does not and *797 should not look with favor upon suspending the question of parentage of a child in limbo, particularly where the child upon a judicial declaration of paternity may enjoy substantial rights.
Based upon the foregoing, the court holds that an agreement executed under the circumstances herein set forth is final and binding upon the mother and child as to its provisions for support and education but that a petition may be maintained for the sole purpose of a declaration of paternity absent the barring of the proceeding by reason of the Statute of Limitations.
This brings us then to a consideration of the second ground of the respondent’s motion to dismiss and at this point it is sadly observed that the law giveth and the law taketh away.
Section 517 of the Family Court Act provides:
“ (a) Proceedings to establish the paternity of the child may be instituted during the pregnancy of the mother or after the birth of the child, but shall not be brought after the lapse of more than two years from the birth of the child, unless paternity has been acknowledged by the father in writing or by furnishing support.
“ (b) If the petitioner is a public welfare official, the proceeding may be originated not more than ten years after the birth of the child. ”
The undisputed facts are that the child was born on July 4, 1963 and that this proceeding was commenced by the service of process on April 27,1966, a period of approximately two years and four months. Unless petitioner is able to establish that ‘ ‘ paternity has been acknowledged by the father in writing or by furnishing support ” or that “ the petitioner is a public welfare official ”, the Statute of Limitations has run and the proceeding is time barred.
Concededly, the respondent never acknowledged paternity in writing. On the contrary, he denied paternity “in writing”. Concededly, too, the petitioner is not a “ public welfare official ”. Accordingly, if the petition is to be sustained, there need be room for a finding that paternity has been “ acknowledged ” by furnishing support.
On the argument on the motion, all parties conceded that such payments as were made by the respondent for the support of the child were made in accordance with the agreement. Since the respondent had explicitly denied paternity in the agreement, it cannot be said that in providing such support he “acknowledged 5 ’ paternity. In point of fact, the legal effect of the payments made under such circumstances is no different than were the respondent to have forwarded a note to the petitioner with *798 each payment stating: ‘ ‘ I reiterate that I am not the father of the child and send you this payment only because I am required to do so by our agreement. ’ ’ Furnishing of support under such circumstances will not toll the Statute of Limitations.
The statutory period of time having lapsed at the time of the commencement of these proceedings, the court is constrained to grant the respondent’s motion to dismiss the petition.