(638 P.2d 365)
No. 52,995

RANDAL PAUL GROSS, a minor, by his mother and next friend, MYRA GROSS, *Appellant*, v. RICHARD O. VANLERBERG, *Appellee*.

Opinion filed December 17, 1981.

*John Ivan,* of Shawnee Mission, *Charles Rooney, Sr.,* of Topeka, and *David L. Miller,* of Shawnee Mission, for the appellant.

*Hugh H. Kreamer* and *Marc A. Elster* of Gardner, Davis, Kreamer, Norton, Hubbard & Ruzicka, Chartered, of Olathe, for the appellee.

Before ABBOTT, P.J., SPENCER and MEYER, JJ.

SPENCER, J.: Issues presented in this cause are (1) whether a nonstatutory action commenced on behalf of a minor child to establish paternity of that child survives the death of the alleged father; and (2) whether summary judgment was properly entered.

This action was commenced November 29, 1977, by the mother and next friend of plaintiff, a child then ten years of age, seeking an adjudication that defendant was the natural father of plaintiff; that defendant be required to provide for the support and education of plaintiff; for counsel fees and for costs of suit. Defendant died February 1, 1979. His will was thereafter admitted to probate and co-executors were appointed and qualified. Plaintiff then moved to substitute the co-executors as parties defendant. This was followed by defendant's motion to dismiss, together with memoranda in support and in opposition to that motion. In this posture, the trial court denied the motion for substitution and

entered summary judgment in favor of defendant. In doing so, the trial judge concluded that:

"[A]bsent a statute expressly providing for the survival of a cause of action, or of an action, to establish paternity and support of an illegitimate child, neither the right of action nor an action already instituted survives the death of the putative father, so no new proceeding can be instituted against the decedent's estate, and an existing action which has not reached judgment abates and cannot be continued against decedent's personal representative."

citing 10 C.J.S., Bastards § 47; 10 Am. Jur. 2d, Bastards § 97; 58 A.L.R.3d 188.

The trial judge reasoned that parental obligation to support legitimate children terminates at death, and illegitimate children should not be treated more favorably. Further, it would be extremely severe and very questionable policy to allow a living woman to swear the paternity of illegitimate offspring upon a dead man. The judge also considered the provisions of K.S.A. 60-225(a)(1), 60-1801 and -1802, and arrived at the conclusion that plaintiff did not have a cause of action or a claim for relief against a deceased parent, any more than a legitimate child, and therefore this cause of action did not survive the death of the defendant.

It is important to note that plaintiff's action was predicated on a father's nonstatutory obligation to support his illegitimate child, as was recognized in *Doughty v. Engler,* 112 Kan. 583, 211 Pac. 619 (1923), and not by means of paternity proceedings under K.S.A. 38-1101 *et seq.*

We also note that the father of an illegitimate child has a duty similar to that imposed upon the father of a legitimate child where the relationship of father and child has been established by acknowledgment of paternity or the judgment of a court of record having jurisdiction of the case. *State, ex rel., v. Schutts,* 217 Kan. 175, 179-180, 535 P.2d 982 (1975).

In *Huss v. DeMott,* 215 Kan. 450, 524 P.2d 743 (1974), it was observed that in Kansas we have two distinct proceedings in which the paternity of an illegitimate child may legally be determined, one to be brought by the mother under the statute (K.S.A. 38-1101 *et seq.*), and the other by the child based on the decision in *Doughty.* The court stated:

"In comparison the child's action under *Doughty* is different in various ways. It is initiated in the district court as any other civil action. Its purpose is to force the putative father to support the illegitimate child. The action is based on the father's

obligation to support his children. That obligation extends to legitimate and illegitimate children alike and arises from the public policy of this state. . . . In such an action paternity has to be established in order to give rise to an obligation to support." 215 Kan. at 452.

In this case, plaintiff seeks to establish his status as a child of defendant, and, paternity having been so established, to require defendant to provide for his support and education. Clearly, the obligation of a father to support his child, whether legitimate or illegitimate, ends with the death of the father, absent enforceable contractual obligations to the contrary. *In re Estate of Sweeney,* 210 Kan. 216, 228-229, 500 P.2d 56 (1972). Accordingly, the trial court was partially correct in that the portion of this action seeking support for plaintiff from the defendant did not survive the death of defendant. Does it then follow that the portion of this action aimed at a determination of the status of this child as the child of defendant must also end with the death of defendant? We think not.

Although it appears this precise issue has not previously been considered in this state, there are numerous cases involving decedents and decedents' estates in which paternity has been the controlling issue.

In *McLean v. McLean,* 92 Kan. 326, 140 Pac. 847 (1914), the question to be determined was whether plaintiff was the illegitimate son of a decedent, and whether the decedent had recognized such relationship in a general and notorious manner. The court stated:

"These are questions of fact for the determination of the jury under proper instructions as to what constitutes a general and notorious recognition of the relation of father and son on the part of the father." 92 Kan. at 329.

*Record v. Ellis,* 97 Kan. 754, 156 Pac. 712 (1916), was an appeal by the administrator of a decedent's estate from a decision adjudging the plaintiff competent to inherit from the decedent, which involved questions of paternity and of general and notorious recognition of such.

*Smith v. Smith,* 105 Kan. 294, 182 Pac. 538 (1919), was an action for the partition of real estate wherein one of the principal questions presented for determination was whether an illegitimate son of decedent was so recognized by the alleged father as to be entitled to inherit from him.

*Nolting v. Holt,* 113 Kan. 495, 215 Pac. 281 (1923), an action in

ejectment and for partition, was commenced by two plaintiffs to recover real estate as recognized sons and heirs of a decedent. Plaintiffs were conceived and born while their mother was living with her husband. After proving it was impossible for their mother's husband to be their father, the children called their mother as a witness and she testified the decedent was their father. It was held the testimony was properly received and the plaintiffs prevailed.

*Lynch v. Rosenberger,* 121 Kan. 601, 249 Pac. 682 (1926), was an action for partition in which an issuable fact was the paternity of one of the claimants who successfully claimed the whole of a decedent's estate as an illegitimate son of the decedent.

In *Jensen v. Reeble,* 167 Kan. 1, 2, 204 P.2d 703 (1949), the court reviewed the result of a "proceeding wherein one claiming to be an heir of decedent sought in probate court to have that relationship established." On appeal to the district court and finally to the Supreme Court, the claimant prevailed.

In *In re Estate of Julian,* 184 Kan. 94, 334 P.2d 432 (1959), an appeal arising out of a dispute as to who were the heirs of an intestate decedent, the court reviewed and upheld proceedings conducted to determine the status of a person alleged to be the daughter of the decedent.

The foregoing are not intended as a complete listing of cases wherein paternity has been an issue and the alleged parent deceased. However, the issue of paternity has long been recognized as one determinable by our courts, even though the putative father may at the time of such determination be deceased. We believe our position on this matter is bolstered by the provisions of K.S.A. 38-1109 which provide the mother's action to determine paternity shall survive the death of the alleged father, and by the provisions of K.S.A. 59-501 relating to intestate succession, wherein the definition of "children" includes illegitimate children when applied to father and child "where the father has notoriously or in writing recognized his paternity of the child . . . ."

In *N.R. v. R.J.D.,* 588 S.W.2d 76 (Mo. App. 1979), the identical issue here presented was considered. The court observed that in most states where the issue has been determined, the action for paternity was created by statute and it has been held the action abates in the absence of a statute to the contrary. It was stated:

"In other states it is said that, being governed by the common law, the action abates because such actions abated at common law. The cases we have read holding the latter view cite no authority for the assertion that the action abated at common law. See *McKenzie v. Lombard,* 85 Me. 224, 27 A. 110 (1892), and *KK v. Estate of MF,* 145 N.J.Super. 250, 367 A. 2d 466 (1976). If there was no such action at common law as our cases indicate, it follows that there was no action to abate at common law." 588 S.W.2d at 78-79.

Having also noted in that state an action may be brought to establish the status of a person as an adopted child of an alleged adoptive parent after the death of that parent, the court held:

"The tendency toward the establishment of the paternity of an illegitimate child after the death of the putative father can be seen in such cases as *In re Gordon,* 54 Misc. 2d 967, 283 N.Y.S.2d 787 (1967) and *Henry v. Rodd,* 95 Misc. 2d 996, 408 N.Y.S.2d 745 (1978). If an action to establish the status of a person as an adoptive child survives the death of the adoptive parent, to hold that an action to establish the status of an illegitimate child abates would seem to discriminate against the illegitimate child. *Levy v. Louisiana,* 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); *Glona v. American Guarantee and Liability Insurance Company,* 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968); *R _____ v. R _____,* 431 S.W.2d 152 (Mo. 1958).

"Our trial courts are capable of discerning the truth and determining issues presented to them. We can find no logical reason to hold that an action to establish the paternity of an illegitimate child abates upon the death of the putative father. 'The law . . . should not look with favor upon suspending the question of parentage of a child in limbo . . . .' *A.B.C. v. X.Y.Z.,* 50 Misc. 2d 792, 271 N.Y.S.2d 781, 785 (1966)." 588 S.W.2d at 79.

We are in agreement with the reasoning set forth by the Missouri Court of Appeals, and hold that the action by this plaintiff to determine his status as a child of defendant did not abate upon the death of defendant and plaintiff's motion for substitution should have been granted.

The record before us clearly establishes the fact that plaintiff was conceived during lawful wedlock and born after his mother and her husband were divorced. The presumption of legitimacy is one of the strongest and most persuasive known to the law. Still, it is a rebuttable presumption and the mother of plaintiff is a competent witness to the fact. *Bariuan v. Bariuan,* 186 Kan. 605, 609, 352 P.2d 29 (1960); *Lynch v. Rosenberger,* 121 Kan. 601. Although defendant argues the trial court did not err in granting summary judgment, we note there was no finding that there remained no genuine issue as to any material fact. The court based its ruling solely upon the conclusion the cause of action did not survive. The one controlling fact to be ascertained in this

cause, asserted by the mother and denied by the defendant, as revealed by his deposition taken during discovery, is whether plaintiff is in fact the son of defendant, now deceased. As this issue remains, summary judgment should not have been entered. See *Lynch v. Rosenberger,* 121 Kan. 601; 46 A.L.R.3d 158, 171.

Reversed and remanded for further proceedings in harmony with this opinion.

MEYER, J.: I dissent.

The following brief summary of facts seems appropriate.

Myra B. Gross, mother of the plaintiff, was married to William J. Gross on February 27, 1954, in Kansas City, Kansas. William J. Gross filed a petition for divorce against Myra B. Gross, and she filed her verified answer and cross-petition wherein she admitted the marriage, admitted there were three children born of the marriage, and further alleged "defendant is pregnant and expecting the parties' fourth child." On October 31, 1966, the parties to that divorce action made and entered into a property settlement agreement. In that agreement, the parties agreed that they were the natural parents of three named minor children and that "the defendant is expecting their fourth child in February." The decree of divorce was entered on January 31, 1967. The decree was approved by counsel for both parties, and included the finding that "defendant is pregnant and expecting the parties' fourth child."

The child was born a few days later on February 4, 1967. The ex-husband died in October, 1971. Several days after the ex-husband died, Myra Gross applied for social security payments on behalf of the child as the son of William J. Gross. The verified affidavit of Myra Gross stating that William Gross was the father of Randal Paul Gross accompanied that application. Since that time, Myra B. Gross has been receiving social security benefits in the amount of $250.00 per month for Randal Paul Gross.

On November 29, 1977, the child, by and through his mother and next friend, Myra B. Gross, filed a petition seeking a determination that Richard O. VanLerberg be adjudicated the child's natural father and that he be required to pay for the child's support, education, counsel fees and the expenses of the action. Mr. VanLerberg died on February 1, 1979. Prior to his death, Mr. VanLerberg denied that he was Randal Paul Gross' natural father.

We can see from the above, admittedly very brief, outline what the results achieved herein would be should the majority opinion be allowed to stand, and should plaintiff on remand somehow prevail. Such results, in part only, are as follows: (1) plaintiff would be bastardized; (2) plaintiff's very clearly presumptive father would be found not to have been the father of his own son and without any chance to argue the matter; (3) the mother would be allowed to reap the benefits of social security payments based upon her ex-husband's earnings even while now denying his fatherhood; (4) the mother would be allowed to do a 360-degree turn *in her own statement* that her ex-husband was the father, as per their stipulation; and (5) the putative father, without the opportunity of trial whatsoever, would be denounced as the father of a child conceived in lawful wedlock of another man with the mother.

The majority herein bases its decision to reverse the trial court on issues of law never presented to that court, and on issues of law not briefed to this court on appeal. Since the case came on before this court without oral argument it follows that the majority reverses the trial court not only on legal theories never presented to that court, but not presented to this court either.

"An issue presented for the first time on appeal will not be considered by this court." *City of Salina v. Jaggers,* 228 Kan. 155, Syl. ¶ 3, 612 P.2d 618 (1980).

"Points neither briefed nor argued on appeal will be deemed abandoned." *Steele v. Harrison,* 220 Kan. 422, Syl. ¶ 5, 552 P.2d 957 (1976).

The majority opinion cites several cases dealing with the establishment of a right of inheritance after the death of the father in proceedings applying statutes giving said right of inheritance to illegitimate children. No specific issue of survival of a cause of action to establish paternity is mentioned in any of the cases.

Some cases involved interpretation of K.S.A. 59-501, which defines children in such a way that illegitimate children may inherit from the father if they meet the requirement of the statute. It provides:

"As used in this article, the word 'children' means natural children, including a posthumous child, and children adopted as provided by law, and includes illegitimate children when applied to mother and child, and also when applied to father and child where the father has notoriously or in writing recognized his paternity of the child, or his paternity thereof has been determined in his lifetime in any action or proceeding involving that question in a court of competent jurisdiction. The word 'issue' includes adopted children of deceased children or issue."

The definition of children is used in reference to rights of intestate succession.

Other cases were decided under predecessor statutes which stated:

"[Illegitimate children] shall also inherit from the father whenever they have been recognized by him as his children; but such recognition must have been general and notorious, or else in writing." G.S. 1909, § 2956; G.S. 1915, § 3845.

Neither party has raised the issue of the child's right to establish his inheritance in an appropriate proceeding by proving that the father generally and notoriously recognized the child as his.

*Smith v. Smith,* 105 Kan. 294, 295-6, 182 Pac. 538 (1919), clearly shows that the question of a general adjudication of paternity is different from the question of establishing a right of inheritance. The case states specifically that although paternity was shown beyond question, that was not sufficient to establish the child's right of inheritance. Rather there must be proof of the father's recognition of the child as his own that is general and notorious.

I might add that I also see here a very serious question of estoppel. I choose not to pursue the question of estoppel, however, because were I to do so I would be doing the very thing about which I criticize the majority.

The courts are in substantial agreement that, absent a statute expressly providing for the survival of an action to establish paternity of an illegitimate child, neither the action brought after the death of the putative father nor an action already instituted before death but not completed by the death of the putative father survives the death of said father. Clearly, such is the majority rule. See *Mtr. of Corbett v. Corbett,* 100 Misc. 2d 270, 418 N.Y.S.2d 981 (1979); *Bell v. Setzer,* 375 So. 2d 61 (Fla. Dist. Ct. App. 1979); *K.K. v. Estate of M.F.,* 145 N.J. Super. 250, 367 A.2d 466 (1976); *Carpenter v. Sylvester,* 267 So. 2d 370 (Fla. Dist. Ct. App. 1972); *Mtr. of Middlebrooks v. Hatcher,* 55 Misc. 301, 285 N.Y.S.2d 257 (1967); *Toms v. Lohrentz,* 37 Ill. App. 2d 414, 185 N.E.2d 708 (1962); *Schumm v. Beery,* 100 Cal. App. 2d 407, 224 P.2d 54 (1950); *Pryor v. Jump,* 183 Okla. 560, 83 P.2d 828 (1938); *Hurst v. Wagner,* 181 Wash. 498, 43 P.2d 964 (1935); *Myers v. Harrington,* 70 Cal. App. 680, 234 Pac. 412 (1925); *People v.*

*Kemppainen,* 163 Mich. 186, 128 N.W. 183 (1910); *McKenzie v. Lombard,* 85 Me. 224, 27 A. 110 (1892); *Clements v. Durham's Administrators,* 52 N.C. 100 (1859); Annot., 58 A.L.R.2d 188; 10 C.J.S., Bastards § 47, 10 Am. Jur. 2d, Bastards § 97.

The rationale for the above rule is varied. Certain cases noted the quasi-criminal nature of bastardy proceedings, since the parent either paid support or was jailed. Others noted that it would be an extremely severe and very questionable policy that would allow a living woman to swear the paternity of her illegitimate offspring upon a dead man. Most cases noted that under the common law, all bastardy proceedings abated upon the death of the putative father and left it up to the legislature to modify the harshness of the common law in this particular. One court noted that while a legitimate child could be disinherited by the father, to allow the child to establish paternity after the death of the father would prevent the father from exercising that option and thus give the illegitimate offspring an advantage over the legitimate offspring.

While some cases rested upon the rationale that the duty to support ceased upon the death of the putative father and thus no action for support could be maintained against the estate, there were several cases where the general rule was applied even where the action for establishment of paternity was for the purpose of asserting other rights.

For example, in *K.K. v. Estate of M.F.,* 145 N.J. Super. 250, the plaintiff limited the relief sought to an establishment of paternity. The plaintiff was seeking to make a claim for compensation under the Criminal Injuries Compensation Act, since the putative father was shot. The court ruled that in the absence of a statute specifically providing for survival of paternity actions on the death of the parent, the common law abatement of a paternity action by the death of the putative father continued to be the law.

In *Mtr. of Corbett v. Corbett,* 100 Misc. 2d 270, an action was filed in the family court of New York for an order of filiation looking towards inheritance. The court reviewed some prior New York decisions in light of a series of cases establishing the constitutionality of their inheritance statute which limited the illegitimate child's right to inherit to cases where the father was so adjudicated during his lifetime. The court held that the action abated even for any purpose such as adding the father's name to a birth certificate.

In *Hurst v. Wagner,* 181 Wash. 498, the mother sued an administrator of the estate for money spent during the lifetime of the father in care and maintenance of her illegitimate child. The court ruled that there was no legal obligation of the father to support the illegitimate child and the demurrer to the petition was sustained.

In *Toms v. Lohrentz,* 37 Ill. App. 2d 414, an action was brought to posthumously establish paternity and enforce liability for necessary medical bills and support of the child against the estate. The court in ruling that the action abated also ruled that the child could not recover even payments for support up to the death of the father.

It is further noted that even where the action is pending at the time of the death of the father, the action has been held to abate upon the death of the father. See *Bell v. Setzer,* 375 So. 2d 61, *Carpenter v. Sylvester,* 267 So. 2d 370, *Schumm v. Beery,* 100 Cal. App. 2d 407, *Pryor v. Jump,* 183 Okla. 560, *Myers v. Harrington,* 70 Cal. App. 680, and *McKenzie v. Lombard,* 85 Me. 224.

In *Pryor v. Jump,* 183 Okla. 560, the court interpreted survival statutes which were quite similar to the Kansas statutes. One statute specifies certain causes of action that survive. The second statute states, " 'No action pending in any court shall abate by the death of either or both parties thereto, except an action for libel, slander, malicious prosecution, for a nuisance, or against a justice of the peace for misconduct in office, which shall abate by the death of the defendant.' " 183 Okla. at 561. The court held that the statute quoted does not prevent the abatement of the action unless the action was specifically listed under the first statute specifying causes of action which survive. Since the paternity action did not survive at common law, nor was it listed in the first statute, the court held that the statute did not prevent the proceeding from abating.

The Kansas survival of claims and abatement of actions statutes are similar to the Oklahoma statutes:

"In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to the person, or to real or personal estate, or for any deceit or fraud, or for death by wrongful act or omission, shall also survive; and the action may be brought notwithstanding the death of the person entitled or liable to the same." K.S.A. 60-1801

"No action pending in any court shall abate by the death of either or both the

parties thereto, except an action for libel, slander, malicious prosecution, or for a nuisance." K.S.A. 60-1802

It should be stated, emphatically, that this is an action concerning survival of the cause of action only. I am in agreement with the majority insofar as the child's right to *initiate* the action is concerned. The majority, for the cornerstone of its argument, would seem to say that every child should have the right to have its parentage determined. I agree, *except* that the putative father, hopefully, also has some rights. Therefore, I believe that, from a policy standpoint, a fair balance would be that the child have the right to allege paternity at any time in an action for support under *Doughty v. Engler*, 112 Kan. 583, 211 Pac. 619 (1923), but that such action does not survive in the event the putative father dies before trial.

The entire case we deal with here was argued and decided, *solely*, on the basis of the effect of K.S.A. 60-1801, 60-1802, and 38-1109, on the survival of the common law action for support established by *Doughty*. The majority opinion failed to address the issue of the effect of K.S.A. 60-1801 and 60-1802 on survival of the action. The trial court was correct in suggesting that 60-1801 determines what *causes of action* survive and that by implication 60-1802 (passed as part of the same act) deals with *actions*. Stated simply, 60-1801 is the *substantive* statute, and 60-1802 is the *procedural* follow-up. No other interpretation makes sense.

The action, therefore, would abate in spite of K.S.A. 60-1802 unless it fell under the categories listed under K.S.A. 60-1801. Any other interpretation would leave K.S.A. 60-1801 superfluous. Since there is no provision for survival of the action under 60-1801, the cause of action to establish paternity under *Doughty v. Engler* does not survive the death of the putative father.

The judgment of the trial court should be affirmed.