JEFFREY MARTIN BULLOCK, APPELLANT,
V. J.B., APPELLEE.
725 N.W.2d 401
Filed December 15, 2006.   No. S-05-636.

Frank E. Robak, Sr., of Robak Law Offices, for appellant.

Deborah A. Sanwick for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HEAVICAN, C.J.

## INTRODUCTION

Jeffrey Martin Bullock instituted a paternity action alleging that he was the father of a child born to J.B. After filing the action, but prior to the completion of genetic testing, Jeffrey died. The personal representative for Jeffrey's estate moved to revive the action. That motion was denied. The primary question presented by this appeal is whether an action for paternity survives the death of the putative father.

## FACTS

On March 29, 2004, Jeffrey filed a petition in Douglas County District Court to establish paternity. In his petition, Jeffrey alleged that he was the natural father of a child born to J.B. on May 20, 2003. In her answer, J.B. denied that Jeffrey was the child's natural father and, in her cross-petition, alleged that she did not know who the child's father was as she had been sexually active with both Jeffrey and another man at the time the child was conceived.

On April 28, 2004, J.B. filed a motion for genetic testing in order to determine paternity. It appears from the record that a hearing was held on that motion on May 4. According to the record, Jeffrey committed suicide on May 13. There is no indication from the record that an order for genetic testing had been entered at that time.

On May 28, 2004, J.B. moved the district court to order the Douglas County coroner "to transmit [Jeffrey's] genetic samples to a laboratory of [J.B.'s] choosing to obtain a genetic paternity test." In her motion, J.B. alleged that the Social Security Administration required that paternity be established in order for the child to be eligible for benefits. That motion was granted on June 18.

On November 10, 2004, Jeffrey's counsel filed a motion purported to compel J.B. to disclose the results of the paternity test. In her response filed November 23, J.B. alleged that at the hearing on the motion for genetic testing after Jeffrey's death, Jeffrey's counsel had demanded the results of the paternity test in exchange for agreeing to the testing. J.B. further alleged that at that hearing, it was made clear to counsel that he had no standing to object to the testing. In her response, J.B. also indicated she had never agreed to provide the results of the testing. The record includes no bill of exceptions detailing the events of that hearing or of any other hearing in this case.

On February 9, 2005, Jeffrey's action against J.B. was dismissed pursuant to an order of dismissal on progression. On March 25, Janet Bullock, Jeffrey's mother and the personal representative of his estate, filed a motion for revivor on behalf of the estate. It appears that Janet's motivation in seeking to revive the action is her belief that a paternity determination is

necessary in order for her to be awarded grandparent visitation. On March 31, J.B. moved to dismiss with prejudice, alleging that Jeffrey was deceased and that the paternity action did not survive his death. On April 5, Janet filed an application to reinstate Jeffrey's action, which the court sustained on April 14. On April 25, the district court issued an order concluding the paternity action did not survive Jeffrey's death, and accordingly, the court denied Janet's motion for revivor.

## ASSIGNMENTS OF ERROR

On appeal, Janet argues, renumbered, that the district court erred in (1) denying her motion for revivor, (2) failing to find Neb. Rev. Stat. § 43-1802(1)(c) (Reissue 2004) unconstitutional, and (3) denying her motion to compel.

## STANDARD OF REVIEW

■ On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Bronsen v. Dawes County, ante* p. 320, 722 N.W.2d 17 (2006).

## ANALYSIS

### SURVIVAL OF PATERNITY ACTION

Janet's primary argument on appeal is that Jeffrey's paternity action survived his death. The issue of whether such an action survives the death of a putative father is one of first impression in Nebraska.

Neb. Rev. Stat. § 25-322 (Reissue 1995) provides in relevant part that

> [a]n action does not abate by the death or other disability of a party, or by the transfer of any interest therein during its pendency, if the cause of action survives or continues. In the case of the death or other disability of a party, the court may allow the action to continue by or against his representative or successor in interest.

Actions which survive, and thus may be revived in the name of a party's personal representative, are listed in Neb. Rev. Stat. § 25-1401 (Reissue 1995), which provides that

> [i]n addition to the causes of action which survive at common law, causes of action for mesne profits, or for an

injury to real or personal estate, or for any deceit or fraud, shall also survive, and the action may be brought, notwithstanding the death of the person entitled or liable to the same.

Neb. Rev. Stat. § 25-1402 (Reissue 1995) further provides that "[n]o action pending in any court shall abate by the death of either or both the parties thereto, except an action for libel, slander, malicious prosecution, assault, or assault and battery, or for a nuisance, which shall abate by the death of the defendant."

Despite the language of §§ 25-1401 and 25-1402 suggesting generally that all actions except those listed in the statutes survive, Nebraska case law has limited the list of those actions which survive to exclude those which involve purely personal rights. In *Holmberg v. Holmberg*, 106 Neb. 717, 718-19, 184 N.W. 134, 135 (1921), we concluded that a divorce action did not survive the death of one of the parties to the marriage, as "[t]he purpose of the action [was] to dissolve the marriage relation, and that relation being dissolved by death, the proceedings after the death of one of the parties would be useless and of no avail." See, also, *Williams v. Williams*, 146 Neb. 383, 19 N.W.2d 630 (1945) (affirming *Holmberg* and noting personal nature of divorce action); *Fitzgerald v. Clarke*, 9 Neb. App. 898, 621 N.W.2d 844 (2001) (suit seeking enjoinment of regulations limiting inmate's ownership of personal property was personal to inmate and did not survive inmate's death).

In *State on behalf of J.R. v. Mendoza*, 240 Neb. 149, 159, 481 N.W.2d 165, 172 (1992), we concluded that the "primary purposes of the filiation statutes [were to identify] the biological fathers of children born out of wedlock and impos[e] upon them an obligation of support." The establishment of such a relationship is undoubtedly personal. The personal representative of a putative father's estate cannot be made the child's father. Nor can a support obligation be imposed upon the personal representative of a putative father's estate. See *Carlson v. Bartels*, 143 Neb. 680, 10 N.W.2d 671 (1943).

The conclusion that a paternity action is personal and does not survive the death of a putative father is consistent with the rule in most jurisdictions. See, *Hayes v. Smith*, 194 Conn. 52, 480 A.2d 425 (1984); *Matter of Mary Ellen C. v. Joseph William C.*,

79 A.D.2d 1024, 435 N.Y.S.2d 738 (1981); *Pryor v. Jump*, 183 Okla. 560, 83 P.2d 828 (1938). See, also, *Bell v. Setzer*, 375 So. 2d 61 (Fla. App. 1979) (action abates because no statute provides for its survival); *K. K. v. Estate of M. F.*, 145 N.J. Super. 250, 367 A.2d 466 (1976) (same); *Schumm v. Beery*, 100 Cal. App. 2d 407, 224 P.2d 54 (1950) (same). See, generally, 41 Am. Jur. 2d *Illegitimate Children* § 63 (2005); Annot., 58 A.L.R.3d 188 (1974). But see, e.g., *Ex parte L.F.B.*, 599 So. 2d 1179 (Ala. 1992) (statute provided that equitable actions, such as paternity action, survived death); *In re Estate of Cody*, 92 Ill. App. 3d 208, 415 N.E.2d 1131, 47 Ill. Dec. 818 (1980) (statute provided for survival of action); *People in Interest of M. E. W. F.*, 42 Colo. App. 495, 600 P.2d 108 (1979) (court concluded that statutes providing for abatement apply only to actions enumerated in statute; since paternity was not included, action did not abate).

■ We therefore conclude that Jeffrey's paternity action was personal to him and did not survive his death. As such, the action could not be revived.

## WAIVER OF ABATEMENT

In addition, Janet argues that J.B.'s action in requesting genetic testing after Jeffrey's death waived J.B.'s right to argue that the paternity action did not survive Jeffrey's death. Whether abatement of an action can be waived is also a question of first impression in Nebraska.

Other courts have considered the question of whether a party could waive the abatement of an action. In *Deeg v. City of Detroit*, 345 Mich. 371, 76 N.W.2d 16 (1956), the Michigan Supreme Court concluded that where an action abated and did not survive the death of one of the parties, the abatement was absolute and the action ceased to exist. The court reasoned that

> [t]he rule is well settled that parties to a case may not give a court jurisdiction over the subject matter if such jurisdiction does not legally exist. By the same process of reasoning it must be said that they cannot by stipulation empower a court to hear and determine an alleged cause of action that does not in fact exist.

*Id.* at 381-82, 76 N.W.2d at 21-22. See, also, *Blodgett v. Greenfield*, 101 Cal. App. 399, 401, 281 P. 694, 694-95 (1929)

("[a]n executrix in her representative capacity could not bind the estate which she represents by inadvertently answering to a charge against the deceased which does not survive and which is barred by the event of his death").

We find the above reasoning persuasive and conclude that because Jeffrey's action abated at his death and did not survive, the action abated absolutely and ceased to exist. J.B.'s action in requesting genetic testing from the district court did not act to waive that abatement. As such, the district court did not err in denying Janet's motion for revivor. Janet's first assignment of error is without merit.

## UNCONSTITUTIONALITY OF § 43-1802(1)(C)

Janet next argues that the district court erred in not finding § 43-1802(1)(c), dealing with grandparent visitation, unconstitutional. In connection with this argument, Janet contends she will be denied grandparent visitation if she is not permitted to revive Jeffrey's paternity action and get a paternity determination. With regard to this issue, the district court found that the grandparent visitation statutes were not implicated in a paternity determination, and thus the district court did not reach the question of whether § 43-1802(1)(c) was unconstitutional.

As an initial matter, we agree with the district court that the grandparent visitation statutes are not directly implicated in a paternity determination. The relevant paternity statutes, see, generally, Neb. Rev. Stat. §§ 43-1401 to 43-1418 (Reissue 2004), make no mention of grandparent visitation. Instead, Neb. Rev. Stat. § 43-1803 (Reissue 2004) provides the procedure for requesting grandparent visitation. The record indicates that Janet has not requested grandparent visitation under this section in the case under review.

Given the absence of a grandparent visitation claim, Janet lacks standing to challenge the constitutionality of § 43-1802(1)(c) in this case. Standing to challenge the constitutionality of a statute under the federal or state Constitution depends upon whether one is, or is about to be, adversely affected by the language in question; to establish standing, the contestant must show that as a consequence of the alleged unconstitutionality, the contestant is, or is about to be, deprived of

a protected right. *State v. Cushman*, 256 Neb. 335, 589 N.W.2d 533 (1999). In the case before us, Janet cannot show that she has been or is about to be deprived of a protected right under § 43-1802(1)(c). This assignment of error is without merit.

### MOTION TO COMPEL

Finally, Janet argues that the district court erred in denying her motion to compel release of the results of the genetic testing. We have concluded that the district court was correct in finding the paternity action abated upon Jeffrey's death and did not survive and that thus, the court did not err in denying Janet's motion for revivor. Given this determination, following Jeffrey's death, there ceased to be an action and thus the motion to compel was a nullity. Janet's assignment of error with respect to the motion to compel is without merit.

### CONCLUSION

We conclude that the paternity action in this case did not survive the death of the putative father. As such, the district court did not err in denying the motion for revivor. The decision of the district court is affirmed.

AFFIRMED.