Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/26/2019 09:06 AM CST

Richard Muller, appellee, v.
John Weeder, appellant.
___ N.W.2d ___

Filed February 26, 2019.    No. A-17-803.

1. **Contempt: Appeal and Error.** In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion.

2. **Appeal and Error: Words and Phrases.** An appellate court may, at its option, notice plain error. Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.

3. **Constitutional Law: Courts: Jurisdiction: Contempt.** A court can issue orders that are necessary to carry its judgment or decree into effect. The power to punish for contempt is incident to every judicial tribunal. It is derived from a court's constitutional power, without any expressed statutory aid, and is inherent in all courts of record.

4. **Contempt: Proof.** Outside of statutory procedures imposing a different standard, it is the complainant's burden to prove civil contempt by clear and convincing evidence.

Appeal from the District Court for Boyd County, Mark D. Kozisek, Judge, on appeal thereto from the County Court for Boyd County, Alan L. Brodbeck, Judge. Judgment of District Court reversed and remanded with directions.

Lyle J. Koenig, of Koenig Law Firm, for appellant.

Ryan D. Cwach, of Birmingham & Cwach Law Offices, P.L.L.C., for appellee.

Moore, Chief Judge, and Riedmann and Welch, Judges.

Welch, Judge.

## INTRODUCTION

John Weeder appeals from the decision of the Boyd County District Court affirming the county court's order finding that he had not complied with a mediation agreement, which was entered as a judgment, requiring him to repair his half of a boundary fence and awarding Richard Muller $4,998.30. He also appeals the district court's order granting Muller's cross-appeal and awarding Muller an additional $1,417.50 for the cost of tree and brush removal. Having determined, based upon plain error review, that the county court applied the wrong standard of proof in connection with the evidentiary hearing, placing the burden of proof on Weeder, we reverse the district court's order and remand the cause with directions.

## STATEMENT OF FACTS

In 2013, Muller obtained real property in Boyd County, Nebraska, which property shares a fence line with property owned by Weeder. In 2014, both Muller and his brother determined that the fence "was beyond repair," leading Muller to replace his half of the fence. After Weeder refused to replace his part of the fence, Muller filed a fence dispute complaint in the Boyd County Court requesting that Weeder be ordered to pay him $5,959.34 "and costs of this action for construction, repair or maintenance of a division fence between adjoining properties." The parties agreed to attend mediation and reached an agreement on May 26, 2015. The mediation agreement provided, in relevant part:

> (1) The right hand rule is agreed to as [delineating] the fence responsibility for each party.

. . . .

(3) Weeder will clear trees, shrubs[,] etc[.] that could damage the fence from his portion of the fence. Weeder will repair or replace his portion of the fence such that the fence will be a 4 wire fence complying with current state statutes.

. . . .

(6) If Weeder fails to complete the actions described in paragraph 3 by October 15, 2015, Muller may complete those actions. In the event that Muller complete[s] the actions required in paragraph 3[,] Muller shall be entitled to the entry of a judgement against Weeder in an amount equal to the reasonable expenses incurred by Muller in completing that work.

They also agreed that Muller had "repaired or replaced his portion of the fence," had cleared trees and shrubs from his portion of the fence, and had installed a four-wire fence which complied with the current state statute on his portion of the fence.

Pursuant to Nebraska state statute, a lawful wire fence

shall consist of at least four wires, of a size not less than number nine fencing wire, to be well secured to posts, the posts to be at no greater distance than one rod from each other; and there shall be placed between every two of the posts one stake or post to which the wire shall be attached. Any of such wires may be a barbed wire composed of two or more single wire strands twisted into a cable wire with metal barbs thereon averaging not more than five inches apart, each of such single wire strands to be of a size not less than number twelve and one-half gauge fencing wire.

Neb. Rev. Stat. § 34-115(5) (Reissue 2016). Further, "[t]he fences described in section 34-115 shall be at least four and one-half feet in height; and in the construction of such fences the spaces between the boards, rails, poles, and wires shall not exceed one foot each, measuring from the top." Neb. Rev. Stat.

§ 34-116 (Reissue 2016). On December 14, 2015, pursuant to Neb. Rev. Stat. § 34-112.02 (Reissue 2016), the county court entered judgment in conformity with the settlement agreement. In that same order, the court ordered that Weeder had 7 days to comply with the settlement agreement and that if Weeder failed to comply within 7 days, Muller "may proceed under paragraph 6 of the [mediation] agreement to repair the fence, [and] submit a bill showing costs necessary to comply with the agreement." Two days after the court ordered Weeder to fix the fence, Tim Nolan, Raymond Wade, Michael Wade, and Aaron Holz worked to repair Weeder's portion of the fence, working 12 hours over a 3-day period. The men trimmed trees, added a fourth wire to the fence, stretched and spaced wires out, added posts "so the posts were the right distance apart," and set a cornerpost.

In early January 2016, Muller viewed the fence repairs and determined that the repairs were not in compliance with the mediation agreement or state statute. On February 10, Muller contracted with Preferred Fencing & Cedar Removal (Preferred Fencing) to remove and replace Weeder's side of the fence. Muller then provided notice to Weeder, by certified letter to Weeder's attorney, that he was going to have the fence replaced, the estimated cost of the replacement, and the additional estimated cost for removal of trees and wooded plants in the fence line. Muller testified that neither Weeder, nor his counsel, told him not to go forward with the fence repair or replacement; however, he admitted that Weeder filed a motion for hearing based upon the documents that he had provided him. The fence removal and replacement occurred on or about March 10 and cost $4,998.30. This amount included charges for 18 hours spent on removing cedar trees that were along the fence line. Additionally, Muller hired Kevin Thomson to clear trees and brush out of the fence line. Thomson submitted an invoice detailing 21 hours of work at $75 per hour less a 10-percent discount, for a total of $1,417.50.

Over 2 days in September and November 2016, a show cause hearing was held as to why Weeder should not have to reimburse Muller $6,415.80 for the costs of the tree and brush removal and the cost of the fence removal and replacement. In his defense of the order to show cause, Weeder called Albert Lee, Nolan, Raymond Wade, Michael Wade, and Holz.

Lee testified that he was familiar with the fence line and that at Weeder's request, he inspected the fence after the repairs had been made. He did so by walking the complete fence line. He testified that the repaired fence was a four-wire barbed wire fence with about 8 inches between the wires. He also testified that the posts on Weeder's portion of the fence were placed approximately every 16 feet, which was approximately the same distance between the posts on Muller's portion of the fence. Lee testified that Weeder's fence was a mixture of old and new wire, and when asked about the size of the wire's gauge, he replied that it "appeared to be standard red brand wire." He further testified that both Weeder's and Muller's portions of the fence appeared to be of the same or a similar size gauge. Lee testified that he has been building and maintaining fences for almost 50 years and that in his opinion, Weeder's fence was repaired in accordance with state statute "[a]s [he] knew it to be" and "[a]s it was explained here [in court]"; however, he admitted that prior to this case, he was not aware what was required in order to make a legal fence, and he stated, "I might add, mine isn't." He further admitted that he did not know required spacing between fencing wires. Photographs that Lee took of the repaired fence were admitted into evidence as exhibits. Lee further admitted that one such exhibit depicted a split cedar post and that he did not know if it was a legal fencepost. Lee admitted that another such exhibit showed a portion of Weeder's fence where a "wire [was] growing into a live tree." Lee admitted that the tree is not a legal post.

Nolan testified that he rents the property on both sides of the fence. Nolan provided materials to fix Weeder's fence. He

estimated the materials were worth a little over $200, and he estimated the value of the labor at $20 per hour. According to Nolan, he and the others assisting placed posts about 15 feet apart and added a new top wire which was either 14 or 16 gauge "[r]egular barbed wire." They then took the other three wires off and spaced them out based on "whatever looks right by eyesight" which he estimated was a "foot apart." He admitted that he did not check to see if the barbs were more than 5 inches apart. Nolan admitted that the site depicted in the exhibit which showed a tree with a wire growing through it "could sure be on [Weeder's] half [of the fence], because there's one tree that had wire growing through it like that."

Nolan testified the fence he repaired met the code requirements that he was "familiar with." Similarly, Raymond Wade testified of Weeder's repaired fence, "It's a lot better fence than I see on some of the others." Michael Wade also testified that in his opinion, the repaired fenceposts were compliant with state statute. Michael Wade further testified that he did not notice any difference between the gauge of the new wire and that of the old wires and that they were placed about 10 to 12 inches apart.

Raymond Wade, Michael Wade, and Holz all corroborated Nolan's testimony that they worked for 12 hours over a 3-day period repairing Weeder's fence. Additionally, the three men estimated the value of the labor at between $15 and $20 per hour.

Muller called three witnesses on his behalf: Thomson, Muller himself, and Muller's brother. Muller testified that he viewed Weeder's fence in early January 2016, after the repairs had been made. His testimony is consistent with the evidence previously set forth in this opinion. Muller also took some photographs of the repaired fence which were received into evidence, along with the flash drive upon which the photographs were saved. In early February 2016, Muller contracted with Preferred Fencing to repair the fence. After doing so, he notified Weeder, by certified letter sent to Weeder's

attorney, that Muller intended to repair the fence to meet state statutes. Muller testified that he received notification of Weeder's motion for a hearing after the fence had already been repaired.

Muller's brother testified that he is familiar with the partition fence, he has fenced his own property and his parents' property, and "in [his] opinion, [Weeder's repairs] didn't meet the statutes as [he] read them."

Thomson testified that in January or February 2016, Muller hired him to clear out the trees and brush on the south side of Weeder's portion of the fence and hardwood trees in the middle of the fence line. In response to a question about the condition and quantity of brush growing into the fence line, he stated, "There [were] some patches that were really . . . thick. You couldn't even see the fence line."

In rebuttal, Weeder called his former attorney, Steven Brewster, who testified that in early to mid-February 2016, he received a packet from Muller which included documents and photographs. The documents included information that Muller was going to replace the fence. The packet was admitted into evidence. In response, Brewster filed a motion for further hearing for the purpose of presenting to the court the condition of the repaired fence. The court took judicial notice of Brewster's motion for further hearing, which was "dated February 23rd, 2016." Brewster testified that he withdrew the motion prior to the scheduled hearing after learning the repaired fence had been torn out and replaced. Muller responded to Weeder's testimony by testifying that no one contacted him about not removing the fence.

In a journal entry entered on December 22, 2016, the county court found that although Weeder, or his associates, did some work on the fence, the work was neither satisfactory, nor in compliance with state statute, nor in compliance with the tenor of the mediation agreement. Thus, the court found that Muller was entitled, pursuant to the terms of the mediation agreement, to bring the fence into compliance with the state

statute and did so by contracting with Preferred Fencing to perform the fence work. Preferred Fencing performed the work on March 12, 2016. The court found that the cost of the fence work was $4,998.30, which the court found to be a reasonable cost to complete the work. Thus, the court entered judgment in Muller's favor against Weeder in the amount of $4,998.30. Weeder appealed, and Muller cross-appealed, to the district court. The district court affirmed the county court's order, finding that Weeder had not complied with a mediation agreement requiring him to repair his half of a boundary fence and awarding Muller $4,998.30. Further, the district court granted Muller's cross-appeal and found the county court erred in failing to award the cost of tree and brush removal. Thus, the district court modified the decision of the county court by awarding Muller an additional $1,417.50 for the cost of tree and brush removal. Weeder timely appeals.

## ASSIGNMENTS OF ERROR

On appeal, Weeder contends that the district court erred in affirming the county court's order on the basis that the county court erred (1) in failing to find that Muller committed spoliation; (2) in finding that the fence, as repaired by Weeder, did not meet the requirements of the mediation agreement and state statutes; and (3) in finding that the fencing contractor's charges were reasonable. Weeder also contends that the district court erred in holding that the county court erred in failing to award Muller the cost of tree and brush removal. Finally, he contends that the district court erred in failing to review his "as applied" constitutional challenge under the plain error doctrine.

## STANDARD OF REVIEW

[1] In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de

novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012).

## ANALYSIS

Before addressing Weeder's assignments of error, we first note the unusual posture of this case. The case began as a claim filed by Muller against Weeder pursuant to Nebraska statutes governing division fences. Prior to trial, the parties mediated their dispute, and as required by § 34-112.02(4), the trial court entered the agreement as the judgment in the action. In summary, the judgment required Weeder to repair his portion of the fence in accordance with applicable statute, or, if he failed to timely repair the fence, Muller was entitled to repair Weeder's portion of the fence and obtain reimbursement of the reasonable cost of repairs from Weeder. Weeder made an attempt to repair the fence; however, Muller deemed the attempt inadequate. In response, Muller had the fence repaired and sought reimbursement of the cost of the fence by filing an application for an order to show cause. Following that application, the court set a hearing on the application.

At that show cause hearing, there was disagreement among the parties on how to proceed with the factual hearing on Muller's application for an order to show cause. Because Muller had filed the application with affidavits stating that he believed Weeder failed to properly repair the fence and that Muller was entitled to reimbursement for his repair of the fence, the court asked Weeder to initiate evidence in opposition to that application. That exchange is captured in the following colloquy:

      THE COURT: And now I'm asking you to call witnesses, and you're telling me you don't want to do that.

      [Weeder's counsel]: I'm just saying, I believe it's [Muller's] burden to show cause, to put in enough

evidence that there's any cause to show. I mean, I'm happy to put my witnesses on, Judge, but we need — I'll call the guy that put in his fence first.

. . . .

[Weeder's counsel]: Judge, I need to be clear. Are we allowing these basically hearsay documents to support their case of what they're entitled to? Don't they have to put on a witness to establish the amount?

THE COURT: And you don't believe the affidavit establishes what they're asking for?

[Weeder's counsel]: No, Judge. That's an out[-]of-court statement. That's hearsay. I have no opportunity to cross-examine.

THE COURT: Okay. The order to show cause is issued to [Weeder] to appear before this Court in the Boyd County Courthouse, Butte[,] Nebraska, on the 12th day of September, 2016, at 1:00 p.m. for [Weeder] to show cause why money judgment is requested in [Muller's] application and affidavit for order to show cause in compliance with this Court's order of December 14th, 2015.

[Weeder's counsel]: I'm going to have to ask for a continuance, Judge, and subpoena these witnesses, because we've got somebody saying — offering hearsay evidence to support a money judgment to which they burned down the evidence and then said, okay, we're going to submit an affidavit, and this is what you owe me. I just can't imagine that that passes due process, Judge. If we need to go forward today, I'll call my witnesses, but I need a continuance to get an opportunity to hear the witness testify, I don't know who did this. It's not even signed. They're just two hearsay documents that — I mean, I could print these out on my own computer.

THE COURT: So you're suggesting that [Muller's counsel has] offered forged evidence?

[Weeder's counsel]: I have no way to determine the reliability without cross-examining the witnesses, Judge.

THE COURT: But nonetheless, the Court's order said
that you were to show cause, not for [Muller's counsel]
to show cause.

Although the court expressed a willingness to grant a continuance, the hearing proceeded with Weeder producing evidence first, followed by Muller. Following the hearing, the court entered an order in favor of Muller, finding that Weeder's repair work was not performed in accordance with state statute or in accord with the tenor of the mediation agreement. The court further held that Muller was entitled to bring the fence into compliance, proceeded to do so, and was entitled to judgment for the cost of that repair. The matter was then appealed to the district court. The district court found that the trial court's findings were not clearly wrong but found Muller was entitled to an additional $1,417.50 in his cross-appeal.

[2] Although Weeder did not assign error to the trial court's procedural posture of the case, that is, placing the burden of proof on Weeder to show cause why a money judgment should not be entered against him for failing to follow the court's prior judgment, an appellate court may, at its option, notice plain error. *Mays v. Midnite Dreams*, 300 Neb. 485, 915 N.W.2d 71 (2018). Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *Id.*

[3] Here, the county court placed the burden of proof on Weeder to demonstrate that he had complied with the court's prior judgment. As the Nebraska Supreme Court explained in *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 675, 782 N.W.2d 848, 862 (2010), *disapproved on other grounds, Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012):

> [A] court that has jurisdiction to issue an order also has
> the power to enforce it. A court can issue orders that are

necessary to carry its judgment or decree into effect. Nebraska courts, through their inherent judicial power, have the authority to do all things reasonably necessary for the proper administration of justice. And this authority exists apart from any statutory grant of authority. We have recently explained that the power to punish for contempt is incident to every judicial tribune. It is derived from a court's constitutional power, without any expressed statutory aid, and is inherent in all courts of record.

[4] However, in determining the standard of proof in connection with the court's inherent power to enforce judgments, the Supreme Court held:

We recognize that many state courts permit parties to prove civil contempt by a preponderance of the evidence. And in some circumstances, Neb. Rev. Stat. § 42-358(3) . . . permits a rebuttable presumption of contempt if a prima facie showing is made that an obligor is delinquent in his or her child or spousal support obligations. But apart from a statutory mandate requiring a different standard, we do not believe presumptions or a preponderance standard is consistent with what we have stated about civil burdens of proof.

. . . .

. . . Accordingly, we overrule all the cases listed in footnote 129 to the extent that these cases hold or imply that proof beyond a reasonable doubt is required for civil contempt proceedings. Outside of statutory procedures imposing a different standard, it is the complainant's burden to prove civil contempt by clear and convincing evidence.

*Id.* at 706-07, 782 N.W.2d at 881.

The trial court here appears to have shifted the burden onto Weeder once Muller filed an affidavit stating his belief that Weeder was in default of the court's order. The trial court then placed the burden of proof on Weeder to show that he was not in contempt and ultimately granted monetary relief to Muller

following that hearing. Without discussing the applicable burden, the district court affirmed the trial court's decision, in part, and granted an additional judgment in favor of Muller. Because we find that the trial court applied the wrong standard of proof in connection with the evidentiary hearing, we reverse the decision of the district court and remand the cause to the district court with directions to reverse the order of the county court and remand the matter for further proceedings consistent with this opinion. Based upon this determination, we need not consider Weeder's assignments of error raised on appeal. See *Weatherly v. Cochran*, 301 Neb. 426, 918 N.W.2d 868 (2018) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

Reversed and remanded with directions.