Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/03/2023 08:05 AM CST

Richard Muller, appellant, v.
Carl Weeder and Margene
Cork, appellees.

___ N.W.2d ___

Filed March 3, 2023.    No. S-21-657.

1. **Motions to Dismiss: Jurisdiction: Appeal and Error.** In reviewing a district court's decision on a party's motion to dismiss for lack of subject matter jurisdiction, an appellate court employs a de novo standard of review.
2. **Actions: Parties: Death: Abatement, Survival, and Revival: Appeal and Error.** Whether a party's death abates an appeal or cause of action presents a question of law.
3. **Appeal and Error.** An appellate court independently reviews questions of law.
4. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the appeal.
5. **Actions: Parties: Death.** A deceased person cannot maintain a right of action against another or defend a legal interest in an action or proceeding.
6. **Actions: Parties: Death: Abatement, Survival, and Revival.** When an action abates upon the death of a party, then the abatement is absolute and the action ceases to exist.
7. **Actions: Parties: Death: Abatement, Survival, and Revival: Jurisdiction.** When an action survives death, the death of a party results in a suspension of further proceedings in the suit for want of proper parties; the only action the court has jurisdiction to take during this period is to revive the action in the name of the personal representative or successor in interest in response to a properly filed motion for revivor.
8. ____: ____: ____: ____: ____. When an action is one which survives the death of a party, the action must be revived in the name of

the representative or successor in interest before a court has any jurisdiction to continue.

 9. **Actions: Parties: Death: Abatement, Survival, and Revival: Statutes.** The language of Neb. Rev. Stat. §§ 25-1401 and 25-1402 (Reissue 2016) should not be understood to suggest that all pending actions other than those specifically listed in the statutes survive the death of a party, because Nebraska case law has limited the list of those actions which survive death to exclude those which involve purely personal rights.

10. **Actions: Contribution.** Fence dispute actions under Neb. Rev. Stat. § 34-112.02 (Reissue 2016) are actions for contribution for fence construction or maintenance.

11. **Statutes: Legislature.** By enacting the division fence statutes, the Nebraska Legislature created in adjoining landowners a statutory duty to construct and maintain a just proportion of the division fence between them.

12. **Actions: Parties: Death: Abatement, Survival, and Revival: Contribution.** It is generally recognized that pending contribution actions survive the death of a party and can be revived in the name of the decedent's personal representative.

13. ____: ____: ____: ____: ____. To the extent a pending fence action seeks only contribution, it survives the defendant's death.

14. **Actions: Parties: Death: Abatement, Survival, and Revival: Statutes.** The right to revive or continue a pending action at law after the death of a party is purely statutory, and there may be a revival or continuance when and only when the case is within a statute permitting it, and strict compliance with the statutory requirements is shown.

15. ____: ____: ____: ____: ____. Because a pending action that survives the death of a party must be revived in the manner provided by statute, a failure to do so means that the pending action has no force and effect with respect to any entity in whose name revivor was required.

16. **Abatement, Survival, and Revival: Statutes.** Nebraska's statutory procedure for revivor is generally set out in Neb. Rev. Stat. §§ 25-1403 to 25-1420 and 25-322 (Reissue 2016).

17. **Actions: Parties: Death: Abatement, Survival, and Revival: Appeal and Error.** The statutory provisions regarding revivor of actions apply to cases in which a party dies pending an appeal.

18. **Actions: Parties: Death: Abatement, Survival, and Revival: Jurisdiction.** It is fundamental that any order of revivor or substitution must be had in the court having jurisdiction at the time of the party's death.

19. **Judgments: Jurisdiction.** When a court lacks jurisdiction and nonetheless enters an order, such order is void and of no force and effect.

20. **Jurisdiction: Appeal and Error.** Where a lower court lacks jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.

21. ____: ____. When an appellate court is without jurisdiction to act, the appeal must be dismissed.

22. ____: ____. An appellate court always has the power to determine whether it has jurisdiction, and even when an appellate court determines it lacks jurisdiction over an appeal because the lower court lacked jurisdiction, the appellate court has the power to vacate void orders and, if necessary, to remand the cause with appropriate directions.

Appeal from the District Court for Boyd County, Mark D. Kozisek, Judge, on appeal thereto from the County Court for Boyd County, Kale B. Burdick, Judge. Judgment of District Court vacated and dismissed, and cause remanded for further proceedings.

Ryan D. Cwach, of Birmingham & Cwach Law Offices, P.L.L.C., for appellant.

Lyle Joseph Koenig, of Koenig Law Firm, for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

This is a fence dispute action between two adjoining landowners, Richard Muller and John Weeder. The county court entered a monetary judgment in favor of Muller, and Weeder appealed. The district court sitting as an appellate court affirmed the judgment as modified, and Weeder appealed that decision to the Nebraska Court of Appeals. Weeder died while the case was pending in the Court of Appeals, but the parties continued litigating and no suggestion of death was filed in that court. Apparently unaware of Weeder's death, the Court

of Appeals issued an opinion that reversed the judgment and remanded the matter for further proceedings.

On remand, the county court conducted further proceedings and once again entered a monetary judgment in favor of Muller. A second appeal was taken, which the district court dismissed for lack of jurisdiction based on Weeder's death. When Muller appealed the dismissal, we moved the appeal from the Court of Appeals' docket to our own to address the impact of Weeder's death during the pendency of the first appeal.

For reasons we will explain, as a result of Weeder's death, the Court of Appeals lacked jurisdiction to issue its opinion and mandate in the first appeal, and we must vacate both as null and void. For the same reason, we must vacate all orders and judgments entered upon remand. And finally, because the district court lacked jurisdiction over the second appeal, we likewise lack jurisdiction to reach the merits. We therefore dismiss this appeal for lack of jurisdiction and remand this matter to the court in which it was pending at the time of Weeder's death.

## I. BACKGROUND

This case began as a dispute between adjoining landowners over maintenance of a division fence. Muller owned property on one side of a fence in Boyd County, Nebraska, and Weeder owned property on the other. At some point in 2014, Muller repaired a portion of the fence and asked Weeder to repair another portion. When Weeder did not comply with that request, Muller filed a fence dispute complaint in the county court for Boyd County.[1]

Thereafter, the parties successfully mediated the fence dispute. Nebraska's fence statutes provide that "[i]f the parties

---

[1] See Neb. Rev. Stat. § 34-112.02(2) (Reissue 2016) ("[i]f the landowners cannot agree what proportion of a division fence each shall construct, maintain, or repair, whether by performance or by contribution, either landowner may commence an action, without further written notice, in the county court of the county where the land is located").

consent to mediate and if a mediation agreement is reached, the court shall enter the agreement as the judgment in the action."[2]

The parties' mediation agreement recited that Muller had repaired his portion of the division fence and installed a four-wire fence that complied with current fence statutes. As to Weeder, the mediation agreement recited:

> (3) Weeder will clear trees, shrubs etc that could damage the fence from his portion of the fence. Weeder will repair or replace his portion of the fence such that the fence will be a 4 wire fence complying with current state statutes.
>
> . . . .
>
> (6) If Weeder fails to complete the actions described in paragraph 3 . . . , Muller may complete those actions [in which event] Muller shall be entitled to the entry of a judgement against Weeder in an amount equal to the reasonable expenses incurred by Muller in completing that work.

Muller and Weeder filed their mediation agreement with the county court, and on December 14, 2015, the court entered the following conditional judgment in the action:

> Parties reached a mediated settlement in this fence dispute. Judgment is entered in compliance with that settlement. [Weeder] has 7 days to comply with the settlement agreement. If he fails to comply within 7 days, [Muller] may proceed under paragraph 6 of the agreement to repair the fence, submit a bill showing costs necessary to comply with the agreement.

The record shows that Weeder made repairs to his portion of the fence, but Muller did not think the repairs complied with the terms of the mediation agreement. So, Muller paid a fence company to repair and/or replace Weeder's portion of the fence and to clear trees and shrubs from the fence line. After doing so, Muller filed what he titled an "Affidavit and

---

[2] § 34-112.02(4).

Application for Order to Show Cause" in the fence action. Our appellate record does not contain either the application or the corresponding order to show cause issued by the county court. But the parties generally agree that Weeder was ordered to show cause why a money judgment should not be entered against him for the expenses incurred by Muller in repairing and replacing Weeder's portion of the fence.

After conducting a hearing on the order to show cause, the county court determined the reasonable cost of the fence repairs totaled $4,998.30, and it entered judgment against Weeder in that amount. Weeder timely appealed the judgment to the district court, and Muller cross-appealed to challenge the county court's failure to include the cost of tree and shrub removal in its judgment. The district court found merit in the cross-appeal, and thus affirmed the judgment as modified.

Weeder timely appealed the district court's decision to the Court of Appeals. It is undisputed that Weeder died in October 2017, while the appeal was pending before the Court of Appeals. It is also undisputed that no one filed a suggestion of death in the Court of Appeals, and we see nothing in the appellate record suggesting that the Court of Appeals was otherwise advised of Weeder's death or that any steps were taken in that court to revive the matter in the name of the personal representative or successor in interest.[3]

In a published opinion,[4] the Court of Appeals concluded the county court had applied the wrong burden of proof during the show cause hearing. The Court of Appeals characterized it as a civil contempt proceeding and held that in such a hearing, Muller had the burden to prove by clear and convincing evidence that Weeder willfully disobeyed the county court's December 2015 judgment. Because it found the county court had applied a different burden of proof, the Court of Appeals remanded the matter for further proceedings.

---

[3] See Neb. Rev. Stat. §§ 25-1403 to 25-1420 and 25-322 (Reissue 2016).

[4] *Muller v. Weeder*, 26 Neb. App. 938, 924 N.W.2d 754 (2019).

Sometime after the matter was remanded to the county court, Muller apparently filed a motion to substitute Weeder's brother and sister as Weeder's successors in interest, because they had inherited the land on which the subject fence was situated. According to the procedural history recited by the county court, there was no objection to the substitution.

After the substitution, Weeder's brother and sister requested clarification of the proceedings on remand. In response, the county court explained that, consistent with the mandate from the Court of Appeals, it would hold a civil contempt hearing at which it would be "[Muller's] burden to prove, by clear and convincing evidence, that the Defendants did not comply with the Court's order [of December 14, 2015,] and are in contempt."

After holding such a hearing, the county court found Weeder's brother and sister in willful contempt of court, reasoning that "their predecessor in interest willfully failed to comply with the judgment of the court entered December 14, 2015, which ratified the parties' mediation agreement." The county court then entered a money judgment in favor of Muller and against Weeder's brother and sister in the amount of $5,943.30.

Weeder's brother and sister timely appealed that judgment to the district court. They later filed a motion in the district court to dismiss the appeal for lack of subject matter jurisdiction, arguing generally that any contempt proceeding against Weeder abated upon his death. The district court heard argument on the motion to dismiss at the same time it held oral argument on the merits of the county court appeal.

In an order entered July 12, 2021, the district court sustained the motion and dismissed the appeal for lack of jurisdiction. It reasoned that any civil contempt proceeding against Weeder was personal in nature and necessarily abated upon his death. The district court thus vacated the county court's contempt judgment for a lack of subject matter jurisdiction, and it dismissed the appeal for the same reason.

Muller appealed the dismissal, and we moved the case from the Court of Appeals' docket to our own.

## II. ASSIGNMENT OF ERROR

Muller assigns, restated, that the district court erred in concluding it lacked subject matter jurisdiction due to Weeder's death.

## III. STANDARD OF REVIEW

[1] In reviewing a district court's decision on a party's motion to dismiss for lack of subject matter jurisdiction, an appellate court employs a de novo standard of review.[5]

[2] Whether a party's death abates an appeal or cause of action presents a question of law.[6]

[3] An appellate court independently reviews questions of law.[7]

## IV. ANALYSIS

[4] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the appeal.[8] Here, it is undisputed that Weeder died in October 2017 while this case was pending before the Court of Appeals.

[5] It does not appear the Court of Appeals was advised of Weeder's death, but the death nevertheless had an immediate impact on that court's jurisdiction. That is so, because a deceased person cannot maintain a right of action against

---

[5] See *State v. Pauly*, 311 Neb. 418, 972 N.W.2d 907 (2022). See, also, *Aldrich v. Nelson*, 290 Neb. 167, 169, 859 N.W.2d 537, 540 (2015) ("[a] motion to dismiss for lack of jurisdiction under Neb. Ct. R. Pldg. § 6-1112(b)(1) which is limited to a facial attack on the pleadings is subject to a de novo standard of review").

[6] *State v. Rice*, 295 Neb. 241, 888 N.W.2d 159 (2016); *In re Conservatorship of Franke*, 292 Neb. 912, 875 N.W.2d 408 (2016).

[7] See *In re Conservatorship of Franke, supra* note 6.

[8] *Evert v. Srb*, 308 Neb. 895, 957 N.W.2d 475 (2021).

another or defend a legal interest in an action or proceeding.[9] In this action, there was a single plaintiff and a single defendant, and we limit our jurisdictional analysis accordingly.[10]

### 1. Did This Action Abate or Survive?

[6] Generally, when a party dies during the pendency of an action, the jurisdictional consequences depend on whether the action is one which abates or survives upon death. If the pending action is the type which abates upon the death of a party, then the abatement is absolute and the action ceases to exist.[11] When absolute abatement occurs while an action is pending on appeal, the correct procedure for the court to follow generally depends upon the nature of the action.[12]

[7,8] Alternatively, when a pending action is one that survives death, the death of a party results in a suspension of

---

[9] *In re Conservatorship of Franke, supra* note 6.

[10] See § 25-1403 ("[w]here there are several plaintiffs or defendants in an action and one of them dies, or his powers as a personal representative cease, if the right of action survive to or against the remaining parties, the action may proceed, the death of the party or the cessation of his powers, being stated on the record").

[11] *Bullock v. J.B.*, 272 Neb. 738, 725 N.W.2d 401 (2006).

[12] See, e.g., *Sherman v. Neth*, 283 Neb. 895, 902, 813 N.W.2d 501, 506 (2012) (holding when administrative license revocation action abates on appeal, "the decision of the Court of Appeals, for which we granted further review, as well as that of the district court, should be vacated and [the] district court should dismiss the action"); *State v. Campbell*, 187 Neb. 719, 720, 193 N.W.2d 571, 572 (1972) (holding death of criminal defendant pending appeal "abates not merely the appeal, but also the proceedings had below in the prosecution from its inception and therefore the correct procedure is to vacate the conviction, and reverse and remand with directions to dismiss the indictment or information"); *Williams v. Williams*, 146 Neb. 383, 387, 19 N.W.2d 630, 632 (1945) (holding when dissolution action abates on appeal "the action abates as if the death had occurred before the verdict or interlocutory judgment or decision, unless saved by a statute").

further proceedings in the suit for want of proper parties.[13] The court's jurisdiction during this suspension period is limited; the only action the court has jurisdiction to take is to revive the action in the name of the personal representative or successor in interest in response to a properly filed motion for revivor.[14] In other words, even when an action is one which survives the death of a party, the action must be revived in the name of the representative or successor in interest before a court has any jurisdiction to continue.[15]

To determine whether the action between Muller and Weeder is one which abated or survived upon Weeder's death, we begin by reviewing the framework that governs abatement and survival of actions in Nebraska.

### (a) Abatement and Survival of Actions

The general rule is found in § 25-322, which states: "An action does not abate by the death . . . of a party . . . if the cause of action survives or continues." Section 25-322 does not specify which actions survive the death of a party, but it does provide that when an action is one that survives, "the court may allow the action to continue by or against [the decedent's] representative or successor in interest."

Neb. Rev. Stat. § 25-1401 (Reissue 2016) lists specific actions that survive the death of either party, and it expressly incorporates those actions that survived death at common law:

> In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to real or personal estate, or for any deceit or fraud, shall also survive, and the action may be brought,

---

[13] See, *Anderson v. Finkle*, 296 Neb. 797, 896 N.W.2d 606 (2017); *In re Conservatorship of Franke, supra* note 6; *Fox v. Nick*, 265 Neb. 986, 660 N.W.2d 881 (2003).

[14] See *Anderson, supra* note 13. See, also, § 25-322.

[15] See *In re Conservatorship of Franke, supra* note 6.

notwithstanding the death of the person entitled or liable to the same.

Actions that abate upon death are identified in Neb. Rev. Stat. § 25-1402 (Reissue 2016), which provides: "No action pending in any court shall abate by the death of either or both the parties thereto, except an action for libel, slander, malicious prosecution, assault, or assault and battery, or for a nuisance, which shall abate by the death of the defendant."

[9] Finally, we have long held that the language of §§ 25-1401 and 25-1402 should not be understood to suggest that all pending actions other than those specifically listed in the statutes survive the death of a party, because "'Nebraska case law has limited the list of those actions which survive [death] to exclude those which involve purely personal rights.'"[16]

With these principles in mind, we consider whether the action Muller filed against Weeder is one which survived, or abated, upon Weeder's death. This presents a question of law,[17] and it necessarily requires that we identify the nature of the action and the legal rights at issue.[18] Our record reflects some disagreement regarding the nature of the action filed by Muller, and we address that issue next.

(b) Nature of Action and
Rights at Issue

In the first appeal, the Court of Appeals described this as a fence dispute action brought pursuant to § 34-112.02, but it treated the show cause hearing in county court as a civil contempt proceeding. Because of this characterization, the parties have focused a significant portion of their argument

---

[16] *Sherman v. Neth*, 283 Neb. 895, 899, 813 N.W.2d 501, 504 (2012). See, also, *Bullock, supra* note 11; *Williams v. Williams*, 146 Neb. 383, 19 N.W.2d 630 (1945); *Holmberg v. Holmberg*, 106 Neb. 717, 184 N.W. 134 (1921); *Fitzgerald v. Clarke*, 9 Neb. App. 898, 621 N.W.2d 844 (2001).

[17] See, *Rice, supra* note 6; *In re Conservatorship of Franke, supra* note 6.

[18] See *Rice, supra* note 6 (explaining that to determine whether action abates, court must consider nature of legal rights at issue).

on whether a civil contempt proceeding abates upon the death of the alleged contemnor.

Muller attempted, on remand, to dispute the Court of Appeals' characterization of this as a civil contempt proceeding, but the lower courts were bound by the law of the case on that issue.[19] This court, however, may examine the question anew.[20] And as we will explain, for purposes of determining whether the action survives or abates, we conclude the case is more properly characterized as a fence dispute action brought under § 34-112.02, and not a civil contempt proceeding.

The record shows that Muller filed a "Fence Dispute Complaint" using the standard court form prescribed by § 34-112.02(2). His complaint asked that Weeder be ordered to pay him "the sum of $5,959.34 . . . for construction, repair or maintenance of a division fence between adjoining properties," and it did not seek recovery under any theory other than the division fence statutes. No counterclaim was filed, and no other claims or theories of recovery were alleged by either party.

[10,11] We have described division fence dispute actions under § 34-112.02 as "action[s] for contribution for fence construction or maintenance."[21] And we have explained that such actions are not based on the common law, because at

---

[19] See *TransCanada Keystone Pipeline v. Tanderup*, 305 Neb. 493, 509, 941 N.W.2d 145, 156 (2020) ("[u]nder the law-of-the-case doctrine, the holdings of an appellate court on questions presented to it in reviewing proceedings of the trial court become the law of the case").

[20] See, generally, *Burnham v. Bennison*, 130 Neb. 558, 561, 265 N.W. 531, 533 (1936) (holding in second appeal, appellate court "'is not bound to follow opinions on questions of law presented on the first appeal and may reexamine and reverse its rulings on such questions, and should do so when the opinion first expressed is manifestly incorrect'").

[21] *Kotrous v. Zerbe*, 287 Neb. 1033, 1036, 846 N.W.2d 122, 125 (2014). See, also, § 34-112.02(1) ("any cause of action under this section . . . shall be an action for contribution").

common law, a landowner could not be compelled to build a partition fence, and landowners who erected such a fence acquired no right of action for contribution from the owner of adjoining land.[22] By enacting the division fence statutes,[23] the Nebraska Legislature created in adjoining landowners a statutory duty to "construct and maintain a just proportion of the division fence between them."[24] As we observed in *Kotrous v. Zerbe*[25]:

> To create a cause of action for contribution, the Nebraska Legislature passed a "fence law," which directs that two or more adjoining landowners shall construct and maintain a division fence between them, with the costs being equitably allocated between the landowners, unless otherwise agreed to by the adjoining landowners. Should an adjoining landowner refuse to share in the costs, the landowner is empowered to bring an action for contribution. The landowner may commence the "action in the county court of the county where the land is located." To commence the action for contribution, the landowner shall file "a fence dispute complaint . . . provided to the plaintiff by the clerk of the county court."

Here, after Weeder was served with Muller's fence dispute complaint, the parties successfully mediated their dispute. Thereafter, the county court entered a conditional judgment based on that agreement.[26] That conditional judgment gave

---

[22] See *id.*

[23] See Neb. Rev. Stat. §§ 34-101 to 34-117 (Reissue 2016).

[24] § 34-102(1).

[25] *Kotrous, supra* note 21, 287 Neb. at 1036, 846 N.W.2d at 125-26.

[26] See *Evert, supra* note 8 (holding court entered conditional judgment in fence action when defendant was given set amount of time to act and depending on such action, plaintiff was authorized to construct division fence and submit statement concerning costs, after which defendant had set amount of time to contest such amount).

Weeder a set period of time to complete repairs and maintenance to his portion of the division fence, and it provided that if he failed to complete the work in accordance with the agreement, then Muller could complete the work, in which event he would "be entitled to the entry of a judgement against Weeder in an amount equal to the reasonable expenses incurred by Muller in completing that work."

Given the conditional nature of the judgment entered by the county court, it seems unlikely the order to show cause—which was issued after Muller stepped in and completed repairs on Weeder's portion of the division fence but before the reasonable value of such repairs had been determined—was focused on holding Weeder in civil contempt of court. Instead, we understand the purpose of the order was to give Weeder an opportunity to show cause why a contribution judgment should not be entered in favor of Muller for the expenses he incurred repairing and replacing Weeder's portion of the fence.

We thus conclude, for purposes of determining whether this pending action abated or survived upon Weeder's death, that the nature of the action was a division fence dispute under § 34-112.02 seeking only contribution, and was not a civil contempt proceeding. As such, we need not address whether civil contempt proceedings abate on the death of the alleged contemnor. We turn instead to whether a fence dispute action survives, or abates, upon the death of the defendant. This is an issue of first impression under Nebraska law.

(c) Fence Dispute Action Survives

Because statutory fence actions did not exist at common law, it follows that such actions cannot be among the "causes of action which survive at common law" for purposes of § 25-1401. And while it is conceivable that one who commences a fence action might choose to permissively join therewith a claim against the adjoining property owner for

an alleged injury to real or personal property[27] or for nuisance,[28] no such claims were joined here.

Instead, Muller's complaint sought only contribution for costs incurred in constructing, repairing, and maintaining the division fence. And the judgment entered in Muller's favor prior to Weeder's death granted the requested relief of contribution, and nothing more.

[12,13] It is generally recognized that pending contribution actions survive the death of a party[29] and can be revived in the name of the decedent's personal representative.[30] Consequently, to the extent Muller's fence action sought only contribution, we hold that the pending action survived Weeder's death.

## 2. Revivor

[14,15] As stated earlier, even when an action is one which survives the death of a party, the action must be revived in the name of the representative or successor in interest before it can continue.[31] The right to revive or continue a pending action at law after the death of a party is purely statutory, and "'there may be a revival or continuance when and only when the case is within a statute permitting it, and strict compliance with the statutory requirements is shown.'"[32] Because a pending

---

[27] See § 25-1401 (actions "for an injury to real or personal estate" survive death).

[28] See § 25-1402 (pending actions "for a nuisance" abate upon death of defendant). See, also, § 34-103 ("[t]he occurrence of trees and woody growth within or encroaching upon a division fence that causes damage to, or dislocation of, the fence shall constitute a private nuisance to the adjacent landowner's possessory interests in his or her land").

[29] See 1 C.J.S. *Abatement and Revival* § 145 (2016). See, also, *Butler v. Trentham*, 224 Tenn. 528, 458 S.W.2d 13 (1970).

[30] See 1 C.J.S., *supra* note 29, § 145 at 170 ("[e]quitable remedies exist to the same extent against executors and administrators as they did against the decedent"). See, also, *Sullivan v. Associated Billposters and Distributors*, 6 F.2d 1000 (2d Cir. 1925).

[31] *In re Conservatorship of Franke, supra* note 6.

[32] *Fox, supra* note 13, 265 Neb. at 992, 660 N.W.2d at 886.

action that survives the death of a party must be revived in the manner provided by statute, "a failure to do so means that the pending action has no force and effect with respect to any entity in whose name revivor was required."[33]

[16,17] Nebraska's statutory procedure for revivor is generally set out in §§ 25-1403 to 25-1420 and 25-322.[34] And it is well settled that the statutory provisions regarding revivor of actions apply to cases in which a party dies pending an appeal.[35]

Section 25-1411 addresses revivor upon the death of a defendant in an action which survives, and it provides:

> Upon the death of a defendant in an action, wherein the right, or any part thereof, survives against his personal representative, the revivor shall be against him; and it may also be against the heirs or devisees of the defendant, or both, when the right of action, or any part thereof, survives against them.

Section 25-1413 addresses the timeframe for orders of revivor, and it provides: "An order to revive an action against the representatives or successor of a defendant shall not be made without the consent of such representatives or successor, unless in one year from the time it could have been first made." And § 25-1415 provides:

> When it appears to the court by affidavit that either party to an action has been dead . . . for a period so long that the action cannot be revived in the names of his representatives or successor, without the consent of both

---

[33] *Anderson, supra* note 13, 296 Neb. at 801-02, 896 N.W.2d at 610. Accord *Fox, supra* note 13, 265 Neb. at 992, 660 N.W.2d at 886 ("[i]f a pending action is not revived in the manner provided by statute, 'such pending action has no force and effect' as to any entity in whose name revivor was required").

[34] See *Fox, supra* note 13.

[35] See, *In re Conservatorship of Franke, supra* note 6; *Schumacher v. Johanns*, 272 Neb. 346, 722 N.W.2d 37 (2006); *Long v. Krause*, 104 Neb. 599, 178 N.W. 188 (1920).

parties, it shall order the action to be stricken from the docket.

Finally, we have construed § 25-322 to permit revivor through a substitution of parties when ""'"supplemental pleadings [are] filed and summons served as in the commencement of an action."'"[36]

[18] Comments made by the county court on remand suggest that Weeder's brother and sister may have consented, in that court, to be substituted as the party defendant in this fence action. But it is fundamental that any order of revivor or substitution "must be had in the court having jurisdiction" at the time of the party's death.[37] The fence action was pending in the Court of Appeals at the time of Weeder's death, and his death suspended the action in that court.[38] The Court of Appeals is, therefore, the only court with jurisdiction to revive the action,[39] and any substitution which purportedly took place in the county court after Weeder's death was without any force and effect.[40]

[19] Presumably because the Court of Appeals was not informed of Weeder's death,[41] our record contains neither a conditional order of revivor by the Court of Appeals pursuant to § 25-1406 nor any order of revivor based upon the consent of the parties pursuant to § 25-1408. No revivor having yet occurred in the Court of Appeals, that court lacked jurisdiction to issue its opinion and mandate in the first appeal.[42]

---

[36] *Fox, supra* note 13, 265 Neb. at 993, 660 N.W.2d at 886, quoting *Hayden v. Huff*, 62 Neb. 375, 87 N.W. 184 (1901).

[37] *Independent Lubricating Co. v. Good*, 133 Neb. 431, 433, 275 N.W. 668, 670 (1937).

[38] See, *Anderson, supra* note 13; *Independent Lubricating Co., supra* note 37.

[39] See *id.*

[40] See *id.*

[41] See § 25-1407.

[42] See, *Anderson, supra* note 13; *Fox, supra* note 13.

And when a court lacks jurisdiction and nonetheless enters an order, such order is void and of no force and effect.[43] Consequently, we must vacate the Court of Appeals' opinion and mandate in the first appeal for lack of jurisdiction. And for the same reason, we must conclude the lower courts lacked jurisdiction over the action upon remand, and any orders entered by those courts after the date of Weeder's death must also be vacated.

[20,21] Where a lower court lacks jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.[44] And when an appellate court is without jurisdiction to act, the appeal must be dismissed.[45] Applying these principles, we conclude that because the district court lacked jurisdiction to enter the decision which is presently before this court on appeal, we also lack jurisdiction over this appeal and must dismiss it.

[22] However, an appellate court always has the power to determine whether it has jurisdiction, and even when an appellate court determines it lacks jurisdiction over an appeal because the lower court lacked jurisdiction, the appellate court has the power to vacate void orders and, if necessary, to remand the cause with appropriate directions.[46] With this principle in mind, before we dismiss the instant appeal for lack of jurisdiction, we first vacate all orders, judgments, opinions, and mandates issued in this action after the date of Weeder's death. And because Weeder's death suspended this action while it was pending in the Court of Appeals, we now remand it to the Court of Appeals for further proceedings consistent with this opinion and Nebraska's revivor statutes.

---

[43] See *Anderson, supra* note 13.

[44] See *Kozal v. Nebraska Liquor Control Comm.*, 297 Neb. 938, 902 N.W.2d 147 (2017).

[45] See *id.*

[46] *Id.*

## V. CONCLUSION

As a result of Weeder's death while this case was pending before the Court of Appeals, the case was suspended in that court pending revivor.[47] Because no revivor has occurred, the action remains suspended and no court has had jurisdiction to address the merits of this fence action since Weeder's death in 2017.

We must, therefore, vacate for lack of jurisdiction all orders, judgments, opinions, and mandates issued by the lower courts in this matter after the date of Weeder's death. Likewise, we must dismiss the instant appeal for lack of jurisdiction and remand the cause to the court in which it was pending at the time of Weeder's death for further proceedings consistent with this opinion and Nebraska's revivor statutes.

Vacated and dismissed, and cause
remanded for further proceedings.

---

[47] See *Anderson, supra* note 13. See, also, § 25-322.